Michael VAN TASSEL, Plaintiff,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.

Civ. A. No. 91–K–1177.

United States District Court, D. Colorado.

Jan. 30, 1992.

Richard A. Brown, Grand Junction, Colo. and James A. Alexander, IV, Palisade, Colo., for plaintiff.

J. Greg Whitehair, Assistant U.S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

As full and adequate briefs have been filed by the litigants, I have determined that oral argument would not provide material assistance in determining this appeal.

Michael Van Tassel is 32 years of age and is suffering from the progressive wasting disease muscular dystrophy. He was professionally trained as a jeweller but had to quit his job as his illness hampered him from performing adequately; his hands tremored and he was unable to move his neck in order to see what he was doing. Since then, (May 20, 1980) the disease has got progressively worse, with a stiffening

of the neck and sitting and standing limitations.[1] An exact picture as to the extent and type of muscular dystrophy that he suffers from could be gleaned if he were to undergo a biopsy.[2] However, he cannot afford one as he has no insurance and the health service will not pay for such an operation. Nonetheless, he remains quite active; he does the cooking for his fiancee and two young children, cleans and undertakes minor repairs in the house, does the shopping, plays cards with his friends, fishes and walks the dog. He can also drive and once a week he drives a total of eighty miles.

The Administrative Law Judge concluded that the claimant had mild muscular dystrophy, but that his impairments did not meet or equal any impairments listed in Appendix 1 to Subpart of Regulation No. 4 of the Social Security Act. He then concluded that despite the claimant's impairments he retained the functional capacity to perform at least sedentary type work which does not require fine hand manipulation. A vocational expert (Ronald J. Brennan) gave examples of such jobs as charge account clerk, cashier, and routing clerk, which jobs existed in significant amounts in the national economy.

### ARGUMENTS IN BRIEF:

The plaintiff contends that the ALJ erred at law in two main respects when making his decision; that he used an incorrect legal standard in assessing the significance of plaintiff's daily activities, and that he disregarded a significant part of the plaintiff's credibility and without setting forth specific reasons for doing so. He also contends the ALJ asked selective and misleading questions of the vocational expert, and that at the very least, Van Tassel ought to be afforded a comprehensive vocational assessment. A significant *sub silentio* factor in his argument is that an accurate determination of the extent of the plain-

tiff's muscular dystrophy and *ab extenso* his disability is impossible, absent a biopsy.

In response, the defendants contend that the ALJ's decision is supported by substantial evidence. The ALJ considered the plaintiff's muscular dystrophy but did not find his present condition so functionally limiting as to preclude substantial gainful activity. The plaintiff could perform sedentary work and this was evidenced by his active life style. Further, the defendant rejects the argument on credibility. The ALJ did not need to make a finding as to credibility; plaintiff's testimony "taken as fully credible, did not establish the presence of disabling [limitations]." *Defendant's Answer Brief* at 4, citing, *Ray v. Bowen*, 865 F.2d 222, 226 (10th Cir.1989).

### ARGUMENTS OF THE PLAINTIFF CONSIDERED:

One of the plaintiff's main contentions is that the ALJ impermissibly reasoned from the plaintiff's capacity, despite his illness, to lead an active social life to the conclusion that he was suitably equipped for life in the workforce. In particular, the plaintiff objects to the following piece of the ALJ's reasoning. "The undersigned notes that the claimant remains active, fishing regularly, playing cards, being able to drive and walk, and walk up to half a mile at a time, all *indicative* of his ability to perform at least sedentary type work." (Tr. at 12.)

█ In *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir.1979), the court stated that,

Ability to drive an automobile, participate in some community affairs, attend school, or do some work on an intermittent basis does not necessarily establish that a person is able to engage in a "substantial gainful activity," but such activities may be considered by the Sec-

---

1. He can sit for about an hour and walk for a half a mile. He has great difficulty in jumping even nine inches. (Tr. at 120).

2. A muscular biopsy was recommended by Dr. Burnbaum (Transcript at 118, 120) and Dr. Mil-

ler who states that "a current neurologic examination is needed to determine the severity of his impairment at the time of reconsideration." (Transcript at 104). For a more detailed consideration of the significance of these pieces of evidence, see, pages 1538–39.

retary, along with medical testimony, in determining the right of a claimant to disability payments under the Act.

■ The fact that the plaintiff could accomplish a few household tasks, went on a trip in a camper and was driven to California was no bar to recovery in *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1982). In *Cavitt v. Schweiker*, 704 F.2d 1193 (10th Cir.1983), doing household chores for brief periods, and driving a car for short intervals did not contradict a disability claim, nor prove an ability to engage in substantially gainful activity, indeed they merely evidenced an ability to take care of oneself. *See also Wright v. Sullivan*, 900 F.2d 675, 685 (3rd Cir.1990), *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989), *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir.1987). "The claimant must have the ability to perform the requisite acts day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982).

In response the appellee argues that "[W]hile activities such as these were not determinative of the issue of disability, they nevertheless could be considered in assessing plaintiff's limitations." (Defendant's Answer Brief at 4). In *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988), the ALJ found the claimant's testimony to be lacking in credibility, and resorted to a disability report the claimant filed which showed that he camped out frequently, hunted and fished, mowed the lawn and had no real difficulty driving a car. The court opined.

We agree with Mr. Gosset that evidence that a claimant engages in limited activities, such as short term work or driving, does not establish that a claimant can engage in light or sedentary work activity. *Talbot*, 814 F.2d at 1462; *Broadbent*, 698 F.2d at 413. We believe, however, that such activities may be considered, along with other evidence, in determining whether a person is entitled to

disability benefits. *Gosset*, 862 F.2d at 807.

*See also Potter v. Secretary of Health and Human Services*, 905 F.2d 1346, 1349 (10th Cir.1990).

The crucial point to consider then, is, whether, the ALJ *determined* on the basis of the claimant's day to day activities that he was incapable of sedentary work, or, whether, he merely utilized such activities as pieces of *evidence that went toward proving* that the claimant was capable of sedentary work.[3] In this context it is useful to see, whether, viewed against the entire record, the claimant's activities support a finding of non-disability. *Gosset*, 862 F.2d at 807. It is clear that the ALJ considered the claimant's activities in the context of an overall assessment of the medical and vocational evidence. (Tr. at 12.) It remains to be seen, however, and this is the claimant's second contention, whether the ALJ's assessment of the rest of the evidence was supportable and in particular whether the ALJ was entitled, as claimant argues, to disregard aspects of the claimant's testimony. "The other area (where the claimant contends the ALJ erred) was his disregard for the plaintiff's testimony regarding sitting and standing limitations without setting forth specific reasons for doing so." (Tr. at 10).

■ The claimant argues that the ALJ ought to have made specific findings on credibility in order to meet the substantial evidence standard where he discounts the claimant's testimony, *Huston v. Bowen*, 838 F.2d 1125 (10th Cir.1988). The ALJ needs to give reasons if he discounts the claimant's credibility and an adverse decision is considered deficient when the ALJ fails to explain that he is discounting and why he is discounting the claimant's testimony.

The ALJ's decision on Smith's claim is deficient for the same reasons that the decisions in *Deloatche v. Heckler*, 715 F.2d 148 (4th Cir.1983) and *Anderson v. Schweiker*, 651 F.2d 306 (5th Cir.1981)

3. The distinction often drawn in the Law of Evidence between a mere *inference* and *proof*

might be a useful analogy in this case.

were deficient. The decision, in short, contains a gap in the reasoning. If the ALJ discounted Smith's testimony about lifting and carrying heavy appliances, he needed both to say so and to explain why.

*Smith v. Heckler,* 782 F.2d 1176, 1181 (4th Cir.1986).

■ An ALJ has a duty to develop the evidence and a full and fair record. *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir.1991) (where it was pointed out by the court that "At the very least, more thorough questioning of Thomas would have been appropriate. *Ordering additional examinations also would have contributed to better development of the record.*"[4] *Thompson v. Sullivan,* 933 F.2d at 587. *Emphasis added.*). "A Social Security hearing is a non adversarial proceeding in which the ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987), citing, *Heckler v. Campbell,* 461 U.S. 458, 471, 103 S.Ct. 1952, 1959-60, 76 L.Ed.2d 66 (1983) (Brennan, J., concurring). *See also Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir.1984). When an ALJ fails to explain his reasons for his adverse determination and insufficiently develops the record it renders it impossible for a court to conclude that the decision is supported by substantial evidence, warranting a remand for further consideration. *Cook v. Heckler,* 783 F.2d 1168, 1174 (4th Cir.1986); *Smith v. Heckler,* 782 F.2d at 1180.

In response the defendant seeks to demonstrate that the ALJ's characterization of the evidence was acceptable. The ALJ recognized that the claimant had muscular dystrophy but pointed to medical evidence which indicated that he only exhibited mild symptoms of the disease. He points to Dr. Burnbaum's assessment,

that although plaintiff could not perform work "that would require a lot of leg

work" or "significant climbing of stairs," and had some weakness in his hands that might preclude very fine work, his dexterity was not terribly impaired and he could use his arms (Tr. 120; *see also* Tr. 126)." (Defendant's Answer Brief at 3).

■ There were other findings made by Dr. Burnbaum, however, which the ALJ ignored, the recommendations by the doctor that Van Tassel ought to have a biopsy to ascertain the severity of his condition and the indication in the successive reports of the doctor that Van Tassel was getting progressively more debilitated, "it seems that there has been perhaps minimal worsening in some ways. He is having more difficulty getting up steps. His quadriceps muscles on muscle testing are slightly weaker ... [H]is neck is more rigid and in fact, dramatically so and I am going to get some neck x-rays done today." (Exhibit 16, Tr. at 121). Dr. Miller also indicated that the claimant was in need of a "current neurological examination to determine the severity of his impairment." (Exhibit 12, Tr. at 104). This is a failure to develop and present the evidence in an impartial light.

In relation to the fact that the ALJ did not make a specific finding as to credibility the defendant relies on *Ray v. Bowen,* 865 F.2d 222, 226 (10th Cir.1989), "Her (Bowen's) testimony taken as fully credible, did not establish the presence of disabling pain. Under these circumstances a formal finding as to the credibility of claimant's pain testimony would be no more than ritualistic." A closer examination of the facts of *Ray* illustrate a more complex picture. *Ray,* in part, concerned the non-exertional pain that the claimant was suffering from. The court found that disability requires more than the mere inability to work without pain, "Miss Ray stated that she was uncomfortable sitting, but she did not testify that her pain rendered her incapable of sitting for extended periods of time, or that it interfered with her ability to work in a seated position." *Ray v. Bowen,* 865 F.2d

---

**4.** It is part of claimant's submissions that this court ought to order that a comprehensive vocational assessment be taken and that a biopsy be performed to assess the nature and severity of

the claimant's disability. See pp. 1538–39 and the conclusions on page 1539 for a more detailed analysis of this submission.

222 at 225. In the present case, *Van Tassel*, in contrast, is alleging what *Ray* failed to raise, that he had severe sitting and standing limitations and that the ALJ ignored his testimony in this regard in reaching his decision. *Ray* is readily distinguishable, indeed it begs the question, were there crucial issues of the claimant's testimony that the ALJ left undeveloped? The claimant complained of significant sitting and standing limitations, both postural and durational. Sitting specifically affects his neck and shoulders (Tr. at 27–8, 30–1, 43–5, 92 and 94). There is medical evidence that the claimant had difficulty getting off the floor during two physicians examinations and that there was stiffness of the neck and weakness in his legs (Tr. at 120–21).[5] It is apparent that the ALJ did not fully develop the record in relation to the claimant's sitting and standing limitations.

A final reservation pertains to the hypothetical questions that the ALJ asked of the vocational expert (Brennan). The ALJ does not mention in his judgment that he posed a hypothetical question reflecting the claimant's testimony as to his sitting limitations and was told that if the claimant could not sit for six out of eight hours a day then he could not perform sedentary work. (Tr. at 47). This is further example of the ALJ's insouciance with regard to presenting a balanced non-adversarial version of the evidence. It is particularly weighted when coupled with his failure to develop the claimant's testimony with regard to his sitting and standing limitations.

### CONCLUSIONS:

The claimant urges that the case be remanded so that at the very least a full vocational assessment can be made. The vocational expert (Brennan) has indicated that he would be prepared to conduct such an assessment. (Plaintiff's Reply Brief at 1). This would enable the ALJ and perhaps this court to benefit from a full consideration of Mr. Van Tassel's sitting and standing limitations. Further, the importance of

a biopsy in assessing the extent of the claimant's muscle deterioration is clearly established. The claimant's arguments are upheld in full and his recommendations endorsed. The case is REVERSED and REMANDED.

---

5. "He, however, had a great deal of difficulty stepping up onto a 9 inch stool and was totally unable to get up onto an 18 inch stool. When he sat on the floor he was able to get up but it did require a Gower's maneuver and considerable difficulty." (Exhibit 15, Tr. at 120.)