Jerry L. UNDERWOOD, Plaintiff,

v.

Donna E. SHALALA, Secretary of the Department of Health and Human Services [1], Defendant.

Civil No. 94–B–2418.

United States District Court, D. Colorado.

Sept. 25, 1997.

---

1. Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296.

In the text, the court refers to the Secretary because she was the appropriate party at the time of the underlying decision.

Frederick W. Newall, Colorado Springs, CO, for Plaintiff.

Thomas H. Krause, Asst. Regional Counsel, Office of the Gen. Counsel, Social Security Admin., Denver, CO, for Defendant.

## ORDER

BABCOCK, District Judge.

On this court's special order of reference for recommendation, Magistrate Judge Patricia A. Coan recommends that this action be reversed and remanded to the secretary for an award of benefits. The recommendation was issued and served on September 5, 1997. The defendant has failed to file specific written objections to the recommendation. Accordingly, the plaintiff is barred from a *de novo* determination of the proposed findings

and recommendation. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), 28 U.S.C. § 636(b)(1). The court now being sufficiently advised,

IT IS ORDERED that the decision of the Secretary is REVERSED AND REMANDED for an award of benefits to the plaintiff.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on a May 12, 1997 special order of reference from District Judge Lewis T. Babcock. Plaintiff appeals the decision of the secretary terminating his social security disability benefits. Judicial review of the Secretary's decision is appropriate under 42 U.S.C. § 405(g). For the reasons discussed below, it is recommended that the matter be reversed and remanded to the Secretary.

### I. Background

Mr. Underwood ("claimant" or "Underwood") was born August 4, 1942. Rec. 31 [2]. Claimant is now fifty five years old and is right-handed. Rec. 78. After a June 1990 on the job injury to his right wrist which developed into Kienbock's disease with lunate collapse and radiocarpal changes (Rec.15), claimant had two wrist fusions, one on August 30, 1990 and the second on July 5, 1991. Rec. 72. He attempted to return to work twice and on both occasions, his hand swelled up and hurt. Rec. 34, 88. He complained of constant aching pain in the wrist and throbbing pain at times, which was aggravated by changes in the weather, moving his wrist and letting his arm just hang. Rec. 36. Underwood takes Tylenol PM for pain (Rec.251), and has not received medical treatment for his wrist since May 11, 1992. Rec. 234. Claimant maintains further that his activities and sleep were disturbed by pain in the affected wrist. Rec. 247–48, 250.

Underwood pursued a worker's compensation claim and a hearing was held June 19, 1992. Rec. 90. At that hearing, vocational

**2.** All references are to pages of the administrative record.

evaluator Wise testified that Underwood did not possess transferable work skills and that there was no job he knew of that Underwood could perform. Rec. 92. The employer's insurer hired Kaye Consultants whose vocational expert report of May 13, 1992 stated that Underwood was employable, but that he would suffer loss of earning capacity due to the injury. Rec. 226. The state administrative law judge found that Underwood was permanently and totally disabled as a result of the June 19, 1990 injury. Rec. 93.

A hearing was held before a Social Security Administration ("SSA") Administrative Law Judge ("ALJ") on January 14, 1994. SSA consulting examiner Dr. Deverell opined on October 13, 1992 that there was "satisfactory distal radius-carpal arthrodesis, but the intercarpal joint, again, does not look as though it has gone on to union," and "[claimant] could function within certain limitations." Rec. 232. Vocational evaluator Wise testified that he considered Underwood to be a "one armed, one handed man" and therefore not employable. Rec. 44–45. Vocational evaluator Shriver said that Underwood was physically qualified to perform unskilled light work, such as a school crossing guard. Rec. 51, 54.

The ALJ found that the medical evidence established that plaintiff sustained an injury to his right wrist, followed by two surgical repairs. The ALJ did not find that the plaintiff's complaints of pain were sufficient to disable him. Rec. 16–17. She determined that, after February 27, 1992, plaintiff had the ability to perform a limited range of light work. Accordingly, she concluded, after considering plaintiff's age, education, past relevant work and residual functional capacity, that, although plaintiff was disabled from July 10, 1990 through February 27, 1992, he was not disabled after that date. Rec. 14.

Plaintiff filed his complaint October 24, 1994, seeking reversal of the Appeals Council decision of August 24, 1994 which affirmed the ALJ. The Appeals Council's decision was the final decision of the Secretary for purposes of judicial review under 42 U.S.C. § 405(g). *Fierro v. Bowen*, 798 F.2d 1351, 1354–55 (10th Cir.1986).

## II. Standard of Review

Judicial review of the Secretary's decision is limited to whether the Secretary's decision is supported by substantial evidence upon review of the record as a whole and whether she applied the correct legal standards. *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir.1993); *Castellano v. Secretary of Health and Human Services*, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.1983) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In reviewing the Secretary's decision, the court cannot reweigh the evidence or substitute its judgment for that of the Administrative Law Judge. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if it is based on a mere scintilla of evidence, but the court will scrutinize evidence that constitutes mere conclusion. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court must affirm the Secretary's decision if it is based on substantial evidence. *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir.1988).

## III. Administrative Law Judge's Decision

The issue was whether Underwood was disabled and entitled to disability benefits and supplemental security income under the Social Security Act after February 27, 1992.

In *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988), the Commissioner established a five step sequential process to determine if a claimant is disabled. *See also,* 20 C.F.R. § 404.1520. If the claimant is determined to be disabled or non-disabled at any step, the evaluation process ends there. The burden of proof is on the claimant through step four, when it then shifts to the Commissioner. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989).

"Disability" is defined as the "the inability to perform substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505 and 416.905 (1995).

Under this definition, a claimant "must have a severe impairment which makes him unable to do his previous work or any other substantial gainful activity which exists in the national economy." *Id.* In determining whether a claimant is able to do any other work, his "residual functional capacity ... age, education and work experience" are considered. *Id.*

The sequential process begins with a determination as to whether the claimant's work activity is substantial. 20 C.F.R. §§ 404.1520 and 416.920. Then, consideration is given to whether the claimant's impairments are "severe" and if so, whether he still maintains the "residual functional capacity" to perform other work, in light of his transferable skills, age, education, and work history. *Id.* If a determination can be made at any step that the claimant is or is not disabled, then further review is unnecessary. *Id.*

Plaintiff was awarded disability benefits from July 10, 1990 through February 27, 1992. His disability was the result of the injury to the right wrist followed by arthrodesis requiring continuing surgical management with function of the extremity not restored within 12 months after onset. Rec. 14, 15. Based on the opinion of the treating physician, Dr. Larson, the ALJ found that the second surgery was successful and that, consequently, plaintiff's condition medically improved, so that, as of February 27, 1992, he did not have a SSA "impairment." Rec. 15–16. The ALJ found that, although the consulting examiner was suspicious that the surgical union of the intercarpal joint in Underwood's right wrist had been unsuccessful, and recommended that Underwood return to the treating doctor, Underwood apparently had not done so. Rec. 17, 253. The ALJ determined, from the testimony of vocational evaluators and a vocational consultant used

in Underwood's worker's compensation case, that there were guard jobs existing in a significant number in the national and local economy that Underwood could perform so that he was no longer "disabled" as defined by the Social Security Act as of February 27, 1992. Rec. 18.

**Assessment of Substantial Gainful Activity**

According to the regulations, "if you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled ... " 20 C.F.R. §§ 404.1520(b) and 416.920(b). Claimant has a high school education. Rec. 31. While Underwood has worked as a fork lift driver ( Rec. 75, 79), his last successful employment was as a lock polisher, which was his trade from 1978 until his right wrist was injured on the job in June 1990. Rec. 32, 79. That job required frequent lifting of up to fifty pounds. Rec. 81. Following the injury to his wrist, Underwood attempted to return to work twice, but was unable to do the work due to pain and swelling. Rec. 34, 35.

The ALJ concluded that Underwood had not engaged in any substantial work activity since July 10, 1990. Rec. 19. She further found that he was unable to perform his past relevant work as a metal polisher or forklift operator. *Id.*

**Assessment of Impairment**

The ALJ evaluated whether Underwood had any mental or physical impairments, which alone or in combination, would be considered "severe." She then determined whether Underwood's impairment significantly limited his mental or physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

The ALJ found that the medical evidence established that Underwood had "status post arthrodesis of the right wrist." Rec. 19. She further found that Underwood's impairment beginning July 10, 1990, and continuing for more than twelve months, equaled Listing 1.12 of Appendix 1, Subpart P. Regulations, No. 4. She found that Underwood was disabled beginning July 10, 1990, but, as of February 27, 1992, claimant's impairment

medically improved and he no longer met or equaled a listed impairment. Rec. 19.

The ALJ's conclusion was based on medical records indicating that the second arthrodesis was successful, that the cast was removed on September 5, 1991, and that when seen by his treating physician, Dr. Larson, on February 27, 1992, Dr. Larson opined that Underwood had reached maximum medical improvement and released him to work with restrictions of a twenty pound maximum lift and a ten pound frequent lift. Rec. 15.

### Residual Functional Capacity

■  At this step in the analysis, the burden is on the claimant to prove he is unable to perform his past relevant work. *Andrade,* 985 F.2d at 1050. The ALJ determined whether Underwood "retain[ed] the residual functional capacity for past relevant work, and, if not, for any other work existing in significant numbers in the national economy."[3] Rec. 19–20. The ALJ was to review the claimant's past work experience and the possible work available in the future given plaintiffs exertional restrictions and his nonexertional complaints of pain.

Underwood maintained that pain and swelling in his wrist prevented him from working (Rec.34–35) and otherwise interfered with his activities around the house and with his wife and children. Rec. 247–252. In assessing Underwood's residual functional capacity, the ALJ considered the credibility of his testimony regarding the severity of pain emanating from his physical impairments. She said "The claimant's testimony regarding the severity of his pain is not fully credible." Rec. 19. The ALJ based her decision on the facts that claimant used only Tylenol for pain and had not sought further treatment or therapy for the pain. Rec. 16.

■  Great deference is given to the ALJ's conclusion as to credibility. *Campbell v. Bowen,* 822 F.2d 1518, 1522 (10th Cir.1987); *see also Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (when determining whether a claimant's pain is disabling, the Secretary is entitled to examine the medical record and evaluate the claimant's credibility).

■  The ALJ assessed the credibility of the claimant's testimony regarding subjective factors under *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987) and Social Security Ruling 88–13.[4] All evidence presented relating to subjective complaints, including the claimant's work record and information and observations by treating and examining physicians and third parties is considered. Regard is given to matters such as the nature, duration and frequency of pain, precipitating and aggravating factors, medication, treatment, functional restrictions and the claimant's daily activities. *Luna,* 834 F.2d at 166. The ALJ's analysis was consistent with *Luna* and also with *Hargis v. Sullivan,* 945 F.2d 1482 (10th Cir.1991) in which the Tenth Circuit held that the factors to consider when assessing credibility of complaints of pain are levels of medication and their effectiveness, the extensiveness of the attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

On February 27, 1992, Underwood's treating physician found him to be at maximum

---

**3.** "If we cannot make a decision based on … medical facts alone and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. §§ 404.1520(e) and 416.920(e).

"If you cannot do any work you have done in the past because you have a severe impairment(s) we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you

cannot, we will find you disabled." 20 C.F.R. § 404.1520(f)(1).

**4.** Underwood argues that Social Security Ruling 88–13 has been superseded by Social Security Ruling 95–5p. Both rulings were attached to Defendant's Response to Plaintiff's Supplemental Brief on Appeal. Ruling 88–13, issued July 20, 1988 was the ruling in effect at the time of Underwood's hearing in 1994. Ruling 88–13 was superseded by Ruling 95–5p October 31, 1995. Both rulings require the ALJ to examine both subjective and objective evidence of pain.

medical improvement, with restrictions of a twenty pound maximum weight lifting, and ten pounds for frequent lifting. Rec. 89. By report of June 2, 1993, SSA physician George Twombly opined that Underwood was restricted to twenty pounds weight lifting and to ten pounds frequently, could stand, sit or walk six hours in a workday, and was restricted from repetitive use of his right hand. Rec. 127–134.

The ALJ found that Underwood had "the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting more than 35 pounds or repetitively using the right wrist." Rec. 19. She found that Underwood was not capable of returning to his past relevant work as a metal polisher or forklift operator and that his residual functional capacity for the full range of light work was reduced by impaired use of the right hand. Rec. 19. The ALJ then found Underwood capable of performing light work. Rec. 20.

■ Once the ALJ found that Underwood had the residual functional capacity to work, there was a shifting of the burden, and the Secretary was required to prove that there was a significant number of jobs in the economy which Underwood could perform given his impairment. *See Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987).

The ALJ used a vocational expert to help evaluate prospective jobs. The ALJ found, from vocational expert Doris Shriver, that Underwood did not possess any past relevant work skills. Rec. 50–51. The ALJ then questioned Shriver, asking her if, assuming an individual of Underwood's age, education and past relevant working experience, and assuming such individual to be restricted in the performance of a full range of work activities with restrictions of a twenty pound weight lifting maximum and a limitation on repetitive use of the dominant extremity, whether there were other jobs in the economy that would accommodate those particular

restrictions. Shriver replied that such an individual could perform three unskilled light duty jobs, parking lot attendant, school crossing guard and cashier. *Id.* Shriver was then asked about the skills required for those jobs and if the jobs existed in significant numbers in the national economy and in Colorado. Rec. 51–55. Following that inquiry, the ALJ asked about the suitability of the three jobs with claimant's level of arithmetic skills, at which time Shriver eliminated the parking lot attendant and cashier jobs from consideration (Rec.55), and opined that there were jobs in the security guard area. Rec. 55–56; *see also* Rec. 51. The ALJ concluded that Underwood could, within his restrictions, perform light duty work in a security guard job and that job existed in significant numbers in the local and national economy. Rec. 20.

### IV. Review

Underwood contends that the Secretary did not meet her burden of showing that Underwood had improved to justify her decision to terminate benefits. Specifically, Underwood claims that the ALJ did not properly evaluate claimant's credibility and ignored the state workers' compensation administrative law judge's determination that found Underwood to be completely and totally disabled. Underwood also contends that the ALJ should have considered all of the vocational evaluator's testing results and all of the treating physician's restrictions.

■ When, as here, benefits were granted for a period of time, the Secretary has the burden of showing that the claimant has the ability to engage in substantial gainful activity before benefits may be terminated. *Glenn v. Shalala,* 21 F.3d 983 (10th Cir.1994). In order to terminate benefits, the Secretary must consider whether the claimant has medically improved.[5]

■ The ALJ found, based on the medical reports, that the second arthrodesis pro-

---

5. Medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s) ..." 20 C.F.R. § 404.1594(b)(1). A medical improvement is only related to a claimant's ability to work "if there has been a

decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and in increase in your functional capacity to do basic work activities ..." 20 C.F.R. § 404.1594(b)(3).

cedure performed in July 1991 was successful and that, when claimant was last seen by his treating physician in February 1992, Dr. Larson stated that the arthrodesis appeared solid, declared claimant to have reached maximum medical improvement and released him to work with restrictions. Rec. 15. As a result, the ALJ found that claimant's impairment had medically improved and that as of February 27, 1992, it no longer equaled a listed impairment. Rec. 16. The ALJ's findings of improvement were supported by the treating physician's reports in the record. Specifically, Dr. Larson's medical report of November 18, 1992 states that, in his examination of claimant on May 11, 1992, the fusion is "quite solid" and he "suggested lifting restrictions." Rec. 234–35. The ALJ's finding that the claimant had medically improved (Rec.19) was based on substantial evidence in the record.

■ Claimant contends the ALJ failed to properly credit his complaints of pain. Questions of evidentiary weight and witness credibility are within the province of the Secretary, whose judgment on such matters is entitled to considerable deference. *See Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir. 1993); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992). Here, the ALJ properly considered the medical evidence and assessed Underwood's credibility with regard to his pain. *See Talley,* 908 F.2d at 587.

■ The ALJ set out her assessment of the factors related to Underwood's pain and claim of disability. Rec. 16–17. She found that Underwood's complaints about the severity of his pain were inconsistent with his use of over the counter medications for pain, his not seeing a doctor on a regular basis and his not receiving physical therapy or any other treatment. She further found that, although Underwood complained of pain to his doctor, his doctor did not recommend further treatment to alleviate the pain, but advised Underwood to return to work with some restrictions. *Id.*

■ To be disabling, pain must be so severe as to preclude substantial gainful employment. *Brown v. Bowen,* 801 F.2d 361, 362–63 (10th Cir.1986). The ALJ correctly evaluated Underwood's complaints of pain in light of the medical records and other reports provided to her, including questionnaires completed by the claimant. There was substantial evidence to conclude that Underwood could perform light work despite his complaints of pain.

■ Underwood next argues that the secretary failed to consider the decision of the state workers' compensation ALJ. Findings made by other agencies are not binding on the Secretary's decision, although they are entitled to weight and must be considered. *Baca v. Department of Health and Human Services* 5 F.3d 476 (10th Cir.1993), citing *Fowler v. Califano,* 596 F.2d 600, 603 (3rd Cir.1979); *Musgrave,* 966 F.2d at 1375.

■ Claimant's specific complaint is that the ALJ did not consider Wise's vocational testing and the treating physician's restrictions as did the state ALJ. The record reveals that the ALJ did consider the testimony of vocational evaluator Doug Wise and noted that Wise had evaluated Underwood in connection with his worker's compensation claim. Rec. 18. The ALJ further commented on the recommendations of Kaye Consultants who provided services to Underwood in connection with his worker's compensation claim, including a May 13, 1992 report which identified a number of jobs claimant could perform within the restrictions assessed by his treating physician on May 11, 1992. *Id.* The record shows that the ALJ reviewed the vocational testing results provided by the claimant's vocational evaluator, Mr. Wise. She considered and contrasted Wise's opinions with those of the SSA vocational evaluator, Doris Shriver. In her decision, the ALJ noted that Wise "had evaluated the claimant in connection with his claim for workers' compensation, testified that claimant is in the lowest 10th of the population in terms of dexterity. He stated that the claimant does not have the 'personality' to perform a sales job. Mr. Wise expressed his opinion that claimant's restriction to light work would eliminate 50% of the job market." Rec. 18. The ALJ further considered Mr. Wise's testing results when she questioned vocational evaluator Shriver and asked about jobs which would comport with

Underwood's level of arithmetic skills. Rec. 54–56. Despite her analysis of the opinions given, the record nevertheless shows that the ALJ did not specifically consider or address the permanent and total disability decision of the state workers' compensation ALJ as mandated by *Baca*.

The ALJ did not include all of claimant's limitations in her questioning of the vocational evaluator. The record reveals that Underwood tested in the lowest third of the population with regard to finger dexterity, abstract reasoning, numerical reasoning and arithmetic level. He tested in the lowest 10% of the population in the areas of spatial perception, verbal reasoning and reading level. Rec. 184. In her hypothetical questioning, the ALJ did not set forth Underwood's limitations in finger dexterity, abstract reasoning, spacial perception, verbal reasoning and writing. Rec. 50–56.

In addition, the ALJ did not include all the restrictions placed upon Underwood by his treating physician in her hypothetical questions to vocational evaluator Shriver. A treating physician's opinion about the nature and severity of a claimant's impairments will be given controlling weight if it is well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(e)(2); *Castellano*, 26 F.3d at 1029. Dr. Larson imposed restrictions in the areas of working in the cold, in temperatures changes, and in consideration of fine finger dexterity limitations. Rec. 228–229. The ALJ commented only that "[a]lthough Dr. Larson noted some additional limitations on the May 1992 Physical Capacities Worksheet, his reports have consistently focused on lifting limitations only." Rec. 17.

The hypothetical questions posed to the vocational evaluator were incomplete because they did not include the temperature and dexterity restrictions imposed by claimant's treating physician, and they did not include the vocational evaluator's testing results with regard to fine finger dexterity, abstract reasoning, spacial perception, verbal reasoning and reading. As a result, the hypotheticals did not accurately set forth

Underwood's impairments as supported by medical and vocational test records. "A vocational expert's response to a hypothetical question constitutes substantial evidence only where the question sets forth precisely all of the claimant's mental and physical impairments." *Hedstrom v. Sullivan*, 783 F.Supp. 553, 557 (D.Colo.1992) (J. Babcock). Accordingly, the ALJ's finding that claimant had the residual functional capacity to perform substantial gainful activity was not supported by substantial evidence in the record.

Claimant further contends that the number of jobs identified by vocational evaluator Shriver was insignificant. Vocational evaluator Shriver identified 25% of the jobs in the security guard area. Rec. 55–56. She testified there were 562,000 guard positions nationwide and almost 8,500 in Colorado. Rec. 51. One quarter of 8,500 jobs in Colorado totals 2,125 guard positions for which Underwood was allegedly qualified. Because the recommendation is that there was not substantial evidence in the record to support the finding of availability of substantial gainful employment within all of claimant's restrictions, claimant's claim of error in the number of jobs purportedly existing in the national and local economies need not be addressed.

Finally, claimant argues that the Secretary failed to develop the record. The ALJ is required to ask sufficient questions to ascertain the nature of a claimant's alleged impairments, what on-going treatment and medication the claimant is receiving, and the impact of the alleged impairment on a claimant's daily routine and activities. *Musgrave*, 966 F.2d at 1374–75 (internal citation omitted). An ALJ has a duty to develop the evidence and a full and fair record. *Van Tassel v. Sullivan*, 781 F.Supp. 1535, 1538–39 (D.Colo.1992) (J. Kane).

Claimant contends that the ALJ failed to develop the record by not seriously considering or by not requesting further evidence of SSA consulting physician Deverell. Since the basis of claimant's entitlement to benefits was the nonunion of the bones in his right wrist and since Dr. Deverell found that nonunion had recurred, claimant contends the ALJ should not have disregarded Dr. Deve-

rell's finding of nonunion to discredit claimant's credibility.

Dr. Deverell examined claimant on October 13, 1992. In his report of the same date, he stated that "... the intercarpal joint, again, does not look as though it has gone on to union." Rec. 232. Dr. Deverell suggested that claimant, after discussion with his surgeon, might want to consider repeat procedures or a bone graft. *Id.* The ALJ commented only that "[a]lthough consulting examiner William F. Deverell [during his examination of claimant on October 13, 1992], noted that he was suspicious that the union of the intercarpal joint had not been successful and recommended that the claimant return to the treating surgeon, the claimant had apparently not done so." Rec. 17; *see also* Rec. 231–32.

Underwood's first wrist fusion was fixed with plates and screws. The fixation loosened and "there was established nonunion at the inner carpal row," necessitating the second wrist surgery. Rec. 231. About ten months after that surgery, claimant was examined by Dr. Larson on May 11, 1992, when it appeared that the joint was properly fusing. Rec. 234. Five months later, however, the SSA non-treating consultant found that the joint was not fusing. Rec. 231–32. In addition, the x-ray report for October 13, 1992 indicates "[m]arked abnormality of the lunate suspicious for avascular necrosis ..." Rec. 233. Dr. Deverell advised the claimant to see his treating surgeon, to bring the x-ray with him, and to discuss repeat or other procedures to achieve arthrodesis. Rec. 232.

Despite the claimant's history of problems with post-surgical nonunion, and the fact of non-union in October 1992, the ALJ did not require a follow up visit or further reports from claimant's treating physician. The ALJ minimized Dr. Deverell's finding of non-union and ignored the recommendation that claimant should follow up with his treating physician. Because the ALJ failed to develop and present the evidence concerning Dr. Deverell's examination in a fair and impartial light, there was not substantial evidence to support her decision that claimant was capable of performing substantial gainful activity. *See Van Tassel,* 781 F.Supp. at 1538.

## V. RECOMMENDATION

For the reasons set forth above, it is recommended that the decision of the Secretary be reversed and remanded for an award of benefits.

Dated Sept. 5, 1997.