Franklin B. BERNAL,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services,
Defendant–Appellee.

No. 87–1685.

United States Court of Appeals,
Tenth Circuit.

June 27, 1988.

Norman Aaronson, Legal Aid & Defender Program, Boulder, Colo. (Kallman Elinoff and J. Bradley Olsen; and R. Eric Solem, Legal Aid Society of Metropolitan Denver, Denver, Colo., with him on the brief), for plaintiff-appellant.

Chalk Mitchell, Asst. U.S. Atty. (Robert N. Miller, U.S. Atty., and Jerry R. Atencio, Asst. U.S. Atty., with him on the brief), Denver, Colo., for defendant-appellee.

Before SEYMOUR and SETH, Circuit Judges, and O'CONNOR, District Judge.[*]

EARL E. O'CONNOR, District Judge.

Franklin B. Bernal brought this action under 42 U.S.C. § 405(g) (1982) after his application for Social Security disability benefits and supplemental security income was denied. The district court affirmed the decision of the administrative agency and Bernal appealed. We affirm.

## I.

Bernal is a 47 year old man with a tenth grade education. In recent years, he has worked as a farm laborer, custodian and security guard. The claimant has a history

[*] Honorable Earl E. O'Connor, Chief Judge of the United States District Court for the District of Kansas, sitting by designation.

of asthma dating back to his childhood. In 1981, Bernal's asthma began to worsen; he then started seeing Dr. William Brubaker, who eventually prescribed a combination of steroids and other medications to control Bernal's asthma. The claimant was hospitalized several times in 1984 and 1985 for brief periods.

In September of 1985, Bernal was referred to Dr. Greg Downey, a respiratory specialist. Dr. Downey diagnosed Bernal as a steroid-dependent asthmatic and determined that he would not survive without continued use of the steroid medication. Dr. Downey also noted that Bernal exhibited known side effects of steroid dependency, including depression, anxiety and weight gain.

Bernal initially applied for social security benefits in September of 1984, claiming that he was disabled due to asthma and allergies. When his application was denied in early administrative proceedings, claimant requested a hearing before an Administrative Law Judge (ALJ). At that time, he also asserted that he was suffering from depression and other side effects from his medication, and that he was disabled due to his physical and mental impairments.

Under the Social Security Act, certain persons can receive supplemental security income and disability insurance benefits if they are "disabled" or unable "to engage in any substantial gainful activity...." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In proving his disability, the claimant must make a prima facie case showing that he is unable to return to prior work he has performed. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988). Once the claimant meets this burden, it is up to the Secretary to show that the claimant can perform other work on a sustained basis. *Id.* In other words, the Secretary must prove that the claimant is able to do other work activities and that there are jobs in the national economy that the claimant could perform. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987).

The Secretary has developed a five-step process to be used in evaluating disability claims for supplemental security income and disability insurance benefits. *See* 20 C.F.R. §§ 416.920, 404.1520. This procedure is well-established and will not be repeated here. *See Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986); *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988). In this case, the ALJ determined that Bernal's impairments did not meet or equal those set forth in the "Listing of Impairments" at the third stage of the evaluation procedure. Consequently, the ALJ proceeded to the fourth step of the process by assessing Bernal's residual functional capacity (RFC). At that stage, the ALJ found that Bernal's allergies and asthma, together with the depression and other side effects of his medication, did not prevent him from engaging in his prior work as a security guard. As a result, the ALJ determined that Bernal was not disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 416.920(e), 404.1520(e).

## II.

In his appeal, claimant asserts a number of errors by the ALJ. In reviewing the decision of the Secretary, our review is limited to determining whether the decision is based on substantial evidence. *Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir. 1987). The court cannot reweigh the evidence nor substitute its judgment for that of the agency. *Id.* However, this does not mean that our review is only cursory. To find that the Secretary's decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir.1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir.1985). The ALJ's decision is also subject to reversal if he or she applied the incorrect legal standard. *Frey v. Bowen,* 816 F.2d at 512.

## A.

■ On appeal, Bernal makes several arguments. First, he contends that the ALJ erred at the third stage of the evaluation process when he found that Bernal's mental impairment did not meet or equal a severe mental impairment under the Listing of Impairments found in the regulations. At this step, a finding of "disability" is made without consideration of vocational factors. 20 C.F.R. § 404.1520(d) (1986). The only matter at issue is whether the claimant's impairments meet or equal a listed impairment. Specifically, Bernal argues that there was substantial evidence to support a finding of mental impairment under Listing 12.04, 12.06 and 12.08 of the Psychiatric Review Technique form. *See* 20 C.F.R. § 404, Subpart P, Appendix I. At this stage, the ALJ must determine that the "medical findings" are at least equal in severity and duration as those in the listed findings. 20 C.F.R. § 404.1526(a). "Medical findings" include symptoms (the claimant's own description of his impairments), signs (observations of anatomical, physiological and psychological abnormalities which are shown by clinical diagnostic techniques) and laboratory findings. 20 C.F.R. § 404.1528 (1986). However, the claimant's descriptions, alone, are not enough to establish a physical or mental impairment. *Id.* at § 404.1528(a).

The ALJ found that Bernal was suffering from the depressive syndrome under Listing 12.04, but that his condition was not severe enough to equal the listings. Bernal contends that this determination is not supported by substantial evidence. Under this listing, a person who is found to persistently exhibit four of the listed behavioral signs is said to meet the Listing, thereby qualifying the claimant as "disabled." The ALJ found that plaintiff only met one of the behavioral signs required under Listing 12.04.

In their reports, neither of Bernal's treating physicians discussed the limitations contained in Listing 12.04. Bernal failed to elicit any direct clinical findings from his own physicians as to the presence of persistent behavioral signs included in the Listings. Dr. Downey merely stated that Bernal had related to him "some symptoms consistent with depression." In addition, none of the observations noted by the consulting psychiatrist, Dr. Kelly, support Bernal's claim that his impairments met or equalled Listing 12.04. The only evidence going to the limitations Bernal claims is his own testimony and that of his wife. The regulations provide, however, that the claimant's own descriptions of his impairments is not sufficient to establish his disability under the Listings. 20 C.F.R. § 404.1528(a). For these reasons, Bernal failed to provide sufficient evidence supporting his claims, and the court finds that the Secretary's decision on this point is supported by substantial evidence.

## B.

Bernal also argues that the ALJ erred at step four in the evaluation in several ways. First, Bernal contends that the ALJ failed to give substantial weight to the testimony of his treating physician, Dr. Downey. Dr. Downey's testimony was presented to the ALJ through a four-page deposition taken by claimant's counsel. In this deposition, Dr. Downey briefly described the claimant's medical history and his medication. The physician noted that Bernal had gained a significant amount of weight since he began taking steroids and that this weight gain would "interfere" with Bernal's ability to perform *manual* labor. Dr. Downey also testified that Bernal's medication was known to have psychological side effects, including depression and anxiety, and that his patient had related to him "some symptoms ... consistent with depression." The deposition also noted that symptoms of anger and anxiety had been expressed by Bernal. In conclusion, Dr. Downey stated that Bernal could not return to his past work in that his asthma would "limit" his ability to do "manual labor, including walking and heavy lifting." Dr. Downey also noted that Bernal needed to avoid working around chemicals and dust. On this basis, Dr. Downey concluded that Bernal was disabled. (Rec., Vol. II, 228–231.)

We have previously established that the Secretary must give substantial weight to the testimony of the claimant's treating physician, unless good cause is shown to the contrary. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). However, a treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence. *Id.* In this case, there is substantial evidence in the record to support the ALJ's rejection of Dr. Downey's testimony. First, Dr. Downey's statements are brief and conclusory at best. In addition, his statement that Bernal is "disabled, as far as I'm concerned" suffers from lack of foundation; his testimony indicated that Bernal's asthma, allergies and weight gain would "interfere" with his ability to perform *manual* labor. However, claimant's inability to perform manual labor does not automatically mean that he is disabled within the meaning of the Social Security Act. After reviewing the record, the court finds that the ALJ's decision to reject Dr. Downey's cursory testimony is supported by substantial evidence in the record.

Bernal also argues that the ALJ's decision is not supported because he misconstrued the report of the consulting psychiatrist. Before the hearing, the ALJ determined that a psychological evaluation was necessary, and Dr. Severance Kelly was asked to examine the claimant. In his report, Dr. Kelly described his interview with Bernal and the symptoms that he exhibited, and concluded with a diagnosis that Bernal was suffering from major depression. Bernal argues that the ALJ's determination that he was "somewhat depressed" directly contradicts Dr. Kelly's diagnosis.

The court rejects this argument. The ALJ's statement that Mr. Bernal was "somewhat depressed" was part of the ALJ's summary of the results from Dr. Kelly's mental status exam. In Dr. Kelly's report, he described Bernal as appearing "somewhat depressed" on the day of the examination. The psychiatrist also noted that Bernal was oriented to time, place, and person and that his speech was coherent. Furthermore, Dr. Kelly indicated that there were no delusions or hallucinations involved. Taken in context, the ALJ's statement is not inconsistent with Dr. Kelly's report.

Nor does the ALJ's decision conflict with the diagnosis of Dr. Kelly. In his report, Dr. Kelly's final diagnosis was "[m]ajor depression, recurrent, with melancholia." Dr. Kelly did comment that Bernal's physical or mental conditions were not likely to change. However, nowhere in his report did Dr. Kelly indicate that Bernal's depression was so severe as to render him unable to perform the duties of his past relevant work. The mere fact that Bernal was diagnosed as suffering from major depression does not automatically mean that he is disabled. The ALJ found that Bernal's depression "does not significantly limit his ability to perform unskilled jobs such as he has held in the past." (Rec., Vol. II, p. 15.) In light of Dr. Kelly's report, the court finds that the ALJ's decision on this point is supported by substantial evidence.

Bernal also challenges the ALJ's decision on the ground that the ALJ failed to consider the side effects of his asthma medication when evaluating his status. Again, the record fails to support this contention. The record reflects that Bernal exhibited some standard side effects arising from the continued use of steroid medication: weight gain, depression and anxiety. Although the ALJ did not expressly refer to these side effects, the decision reflects that such factors were considered. First, the ALJ noted that Bernal could perform the job as a security guard because it was unskilled "and did not involve any contact with the public in situations involving abnormal pressure." The ALJ further noted security guard work normally was considered light work and did not involve lifting heavy weights. It was also noted that a number of security positions were sedentary and did not require extensive walking. All these comments reflect the ALJ's concern with the side effects of Bernal's medication. Therefore, the court rejects Bernal's challenge on this point.

### III.

■ As his final point, Bernal contends that the ALJ erred when he completed the medical portion of the case review and the RFC assessment himself. Bernal argues that a qualified psychiatrist or psychologist was required to complete those portions of the record. Bernal relies on 42 U.S.C. § 421(h). This section provides: "An initial determination ... that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Secretary had made *every reasonable effort* to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." (Emphasis added.)

To carry out this new statute, the Secretary promulgated 20 C.F.R. § 404.1520a(d), which pertains to the preparation of documents recording findings of mental impairments. The regulation provides as follows: "(1) At the initial and reconsideration levels the standard document must be completed and signed by our medical consultant. At the administrative law judge hearing level, several options are available: (i) The administrative law judge may complete the document without the assistance of a medical advisor; (ii) The administrative law judge may call a medical advisor for assistance in preparing the document; *or* (iii) Where ... the issue of a mental impairment arises for the first time at the administrative law judge hearing level, the administrative law judge *may* decide to remand the case to the State agency for completion of the document and a new determination. Remand may also be made in situations where the services of a medical advisor are determined necessary but unavailable to the administrative law judge." (Emphasis added.) The three options set out in section 404.1520a(d) are clearly written in the disjunctive. Thus, under the regulation, the ALJ had three options for completing the PRT, including the choice of completing the documentation himself.

However, Bernal contends that utilizing this option of the regulation violated the federal statute. Section 421(h) was enacted as a part of the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794. The purpose of the Act was to clarify "statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits as a result of careless or arbitrary decision-making by the Federal government." H.R.Rep. 98–618, 98th Cong., 2d Sess. 1, 2, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3039. As originally proposed by the House, the section *required* a psychiatrist or psychologist employed by the State agency to complete the medical portion of the documents before it was determined that a claimant was not disabled by mental impairments. *Id.* at 3041. This requirement was deemed necessary to assure an accurate determination of the person's capacity for substantial gainful activity. *Id.* at 3055.

The Senate version of the Act, however, only required that "every reasonable effort be made" to use qualified psychiatrists or psychologists in this process. H.Conf.Rep. No. 98–1039, 98th Cong., 2d Sess. 23, 34, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3080, 3092. This version of the bill was accepted by the congressional conference committee. However, the conference report contains no real discussion about the meaning of "every reasonable effort."

In light of this legislative history, the court cannot find that the Secretary or the ALJ has the absolute duty to have a psychiatrist or psychologist complete the reports. Nor are we compelled to delineate the boundaries of the duties imposed under section 421(h) at this time. In this case, the record is completely devoid of any evidence seriously challenging the ALJ's final determination regarding the severity of Bernal's impairments or the appropriateness of the RFC assessment given by the ALJ. Since the ALJ's decision is amply supported by the medical reports and the record, Mr. Bernal was not prejudiced by the ALJ's actions. For these reasons, we find no error in the fact that the case review and RFC were completed by the

ALJ without the assistance of a mental health professional.

For all these reasons, the court finds that the decision of the Secretary is supported by substantial evidence and therefore must be AFFIRMED.