**Johnny L. GOREE, SS# 441–50–2392, Plaintiff,**

**v.**

**John J. CALLAHAN, Acting Commissioner of Social Security Administration,[1] Defendant.**

**No. 96–C–439–J.**

United States District Court,
N.D. Oklahoma.

May 19, 1997.

---

1. Effective March 1, 1997, President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security. Pursuant to Fed. R.Civ.P. 25(d)(1), John J. Callahan, Acting Commissioner of Social Security, is substituted for

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff.

Cathryn McClanahan, U.S. Atty., Tulsa, OK, for defendant.

### ORDER [2]

JOYNER, United States Magistrate Judge.

Plaintiff, Johnny L. Goree, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner denying

Shirley S. Chater, Commissioner of Social Security, as the Defendant in this action.

2. This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

Social Security benefits.[3] Plaintiff asserts that the ALJ erred because (1) he neglected to properly evaluate Plaintiff's mental impairment, (2) he improperly relied on post-hearing reports although Plaintiff had requested the opportunity to cross-examine the individuals who submitted the reports, and (3) because he improperly evaluated Plaintiff's physical impairments. For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision.

## I. PLAINTIFF'S BACKGROUND

Plaintiff testifies that he suffered from rheumatoid arthritis and was unable to work due to pain in his right hand, lower back, and right foot. [R. at 39]. Plaintiff takes Motrin for swelling. [R. at 91].

Plaintiff was born on May 20, 1947. [R. at 72]. Plaintiff has a sixth grade education and is unable to read or write. [R. at 72, 88]. Plaintiff's previous work experience includes working as a stone mason, a front end loader, and a backhoe operator. [R. at 72].

## II. SOCIAL SECURITY LAW & STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.[4] See 20 C.F.R. § 404.1520. Dis-

ability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment....

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy....

42 U.S.C. § 423(d)(2)(A).

█ The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988); *Williams*, 844 F.2d at 750.

█ The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir.1993). The Court will not reweigh the evidence or substitute its

---

3. Plaintiff filed an application for disability and supplemental security insurance benefits on December 4, 1992. [R. at 104]. The application was denied initially and upon reconsideration. A hearing before Administrative Law Judge James D. Jordan (hereafter, "ALJ") was held February 14, 1994, and December 12, 1994. [R. at 30, 69]. By order dated May 15, 1995, the ALJ determined that Plaintiff was not disabled. [R. at 13]. Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. On April 26, 1996, the Appeals Council extended Plaintiff's time for appeal. [R. at 13].

4. Step one requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically se-

vere (step two), disability benefits are denied. At step three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to step four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (step five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. See *Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir.1988).

judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams,* 844 F.2d at 750; *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan. 1985).

■ "The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Williams,* 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams,* 844 F.2d at 750.

■ This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when she uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass,* 43 F.3d at 1395.

### III. THE ALJ'S DECISION

In this case, the ALJ determined that Plaintiff was not disabled at Step Four of the sequential evaluation. The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to lift no more than 50 pounds occasionally and 25 pounds frequently with only occasional stooping. [R. at 21]. The ALJ additionally noted that Plaintiff was able to understand and perform simple but not detailed instructions. [R. at 21]. Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff retained the RFC to perform his past relevant work. [R. at 22].

---

**5.** Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L.

### IV. REVIEW
#### Due Process

Plaintiff initially asserts that the ALJ erred by relying on a post-hearing report from a doctor who never examined Plaintiff. Plaintiff notes that after being supplied with a copy of the report, Plaintiff requested a supplemental hearing and the opportunity to cross-examine the doctor. According to Plaintiff the ALJ ignored his request and issued his opinion without providing Plaintiff with any opportunity to examine the doctor. Defendant notes, in his brief, that Plaintiff has raised this issue. However, Defendant does not address the issue and makes no argument with respect to the due process concerns raised by Plaintiff.

Plaintiff's first hearing before the ALJ was on February 14, 1994. [R. at 69]. A second hearing was held December 12, 1994. The ALJ noted in that hearing, that one reason the second hearing was necessary was to provide Plaintiff with an opportunity to cross-examine doctor Paul April. [R. at 34, 47].

After the December hearing, the ALJ determined that additional information was necessary, and sent interrogatories to Thomas A. Goodman, M.D. [R. at 236]. The Interrogatories addressed whether Plaintiff met a listing, Plaintiff's physical limitations, whether Plaintiff's pain interfered with his ability to work, and whether Plaintiff had sought appropriate medical treatment. [R. at 237]. The doctor replied, by letter dated January 27, 1995, noting that Plaintiff did not meet a Listing, that nothing in the record indicated that Plaintiff would be impaired in his ability to work due to his I.Q. or other "psychiatric" problems, and that Plaintiff had no psychiatric limitations. [R. at 240].

The ALJ sent a letter to Plaintiff, dated February 14, 1995, informing him of the information obtained from Dr. Goodman and noting that Plaintiff could submit written comments, submit additional interrogatories,

No. 103–296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

or request the right to cross-examine the doctor. [R. at 243]. By letter dated February 22, 1995, Plaintiff noted that "as per your letter of February 14, 1995," he requested a supplemental hearing with Dr. Goodman. Plaintiff asked that he be advised of the earliest possible opportunity for the hearing. [R. at 244]. The record does not indicate any further communication between the ALJ and Plaintiff, or any additional hearings, prior to the ALJ's denial of benefits on June 15, 1995. Noting in the record suggests that Plaintiff was ever provided with the opportunity to cross-examine Dr. Goodman, or to submit interrogatories to Dr. Goodman. In his decision denying benefits, the ALJ referenced the report he received from Dr. Goodman which stated that Plaintiff had no psychiatric limitations.

In *Allison v. Heckler,* 711 F.2d 145 (10th Cir.1983), the Tenth Circuit Court of Appeals addressed the ALJ's reliance on a post-hearing report in denying benefits. The Court noted that no evidence at the hearing established that the claimant was disabled, and that after the hearing the ALJ sent the hearing record to a doctor for review. The ALJ relied on the conclusions in that doctor's report in finding that the claimant was not disabled and in denying benefits. The claimant contended that the ALJ's reliance on the post-hearing report denied her due process. The Court concluded that "[a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report." *Id.* at 147. The Court reversed the case, concluding that "[s]hould the Secretary wish to reopen the hearing and properly admit Dr. Harvey's report, Allison must be provided the opportunity to subpoena and cross-examine Dr. Harvey, and to offer evidence in rebuttal." *Id.*

■ In this case after the close of the second hearing, the ALJ, requested additional information from a consulting doctor. After receiving the doctor's report, the ALJ informed Plaintiff of his right to submit interrogatories to the doctor, or to request the opportunity to cross-examine the doctor. However, although the Plaintiff *requested*

that he be given the opportunity to cross-examine the doctor, the ALJ seemingly ignored this request. The ALJ rendered his decision without any additional information from the Plaintiff with respect to the post-hearing report from Dr. Goodman.

Defendant ignores this argument on appeal and provides no reason for the ALJ's failure to permit Plaintiff the opportunity to counter the evidence supplied by Dr. Goodman. Pursuant to *Allison,* such a failure constitutes a denial to Plaintiff of his due process rights. As with *Allison,* on remand, if the Commissioner chooses to rely on the post-hearing report, Plaintiff must be provided with the opportunity to supply additional information and cross-examine Dr. Goodman.

**Prospective Application of *James***

Defendant additionally argues that Plaintiff failed to preserve his right to a review of the issues which he currently raises in district court because Plaintiff failed to present the issues for administrative review. Defendant relies on *James v. Chater,* 96 F.3d 1341 (10th Cir.1996). Defendant addresses whether or not *James* is prospective in a three-line sentence, noting only that *James* is not prospective because it "is but a reiteration of well established case law."

In *James,* the Tenth Circuit Court of Appeals noted that "[o]rdinarily, issues omitted from an administrative appeal are deemed waived for purposes of subsequent judicial review." *James,* 96 F.3d at 1343 (citations omitted). In addition, the Court observed that many circuits have applied this rule to social security opinions. The Court concluded that to effectively preserve issues and raise them at the district court, a claimant must first specifically present the issues to the Appeals Council. *James,* 96 F.3d at 1344. Consequently, *James* requires a claimant to first present issues to the Appeals Council before raising such issues to the district court.

■ The tenor of *James* is certainly prospective. The Tenth Circuit summarized its holding, noting that "we announce a prospective rule today that should have a significant salutary effect on the administrative prosecution of social security disability claims: As in

other agency adjudications, issues not presented to the Secretary through the administrative appeal process may be deemed waived on subsequent judicial review." *James,* 96 F.3d at 1342. And, in the concluding sentence, the Court writes that *"[h]enceforth,* issues not brought to the attention of the Appeals Council on administrative review may, given sufficient notice to the claimant, be deemed waived on subsequent judicial review." *James,* 96 F.3d at 1344 (emphasis added).

In addition, the *James* opinion states that it is deciding the case on the merits "[g]iven the due process concerns implicated by enforcement of a waiver rule about which the adversely affected party did not have adequate notice, through such means as direct admonition for *pro se* claimants, or published case law guidance for counsel...." *James,* 96 F.3d at 1344. This language seems to require some type of *prior* notice to the claimant or claimant's counsel of the effect of a failure to present issues to the Appeals Council. In this case, the record does not indicate that Plaintiff was informed of the potential waiver, and obviously the *James* decision did not provide guidance within the Tenth Circuit to claimant's counsel until after it was decided.

The *James* opinion certainly presents itself as prospective in nature. Defendant argues only that it is not prospective because it is only reiterating "well established case law." To support this statement, Defendant relies on several cases which address the principle of "exhaustion of administrative remedies." However, a claimant may exhaust his administrative remedies (with respect to the appeal of the denial of benefits) but, because the claimant failed to present a specific issue within that appeal to the Appeals Council, the claimant (under *James* ) may be precluded from raising a specific issue within that appeal to the district court. Consequently *James,* and the issues outlined by the courts in the decisions cited by Plaintiff, are not coextensive. Regardless, *James* certainly contemplates prospective application, and absent a more compelling argument from Defendant, the Court is reluctant to adopt an interpretation that is inconsistent with the plain language of the Tenth Circuit opinion.

Accordingly, the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this opinion.