**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHARON K. BALDWIN,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 02-5117
(D.C. No. 01-CV-360-J)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **McCONNELL**, Circuit Judges.

---

      Plaintiff-appellant Sharon K. Baldwin appeals from the order entered by the

district court affirming the Social Security Commissioner's denial of her

application for supplemental security income (SSI) benefits under Title XVI of

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the Social Security Act. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

## I.  Background.

After plaintiff's application for SSI benefits was initially denied, a de novo hearing was held before an administrative law judge (ALJ). In a decision dated February 9, 1999, the ALJ went through the five-part sequential evaluation process for determining disability and found: (1) that plaintiff's back impairment, while severe, does not meet or equal the step-three listing for vertebrogenic disorders of the spine, Listing 1.05C, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (1998); [1] (2) that plaintiff has the residual functional capacity to perform work at no greater than the light exertional level subject to no repetitive stooping or twisting; (3) that plaintiff does not have the residual functional capacity to perform her past relevant work; but (4) that plaintiff was not disabled during the relevant time period because the Commissioner met her burden at step five of showing that there are a significant number of jobs in the national economy that plaintiff can perform despite her back impairment.

---

[1]     All citations herein to the Code of Federal Regulations are to the regulations that were in effect at the time of the ALJ's decision in February 1999. We note that Listing 1.05 was revised and renumbered in 2002, and it is now Listing 1.04.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04 (2002).

In March 2001, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In May 2002, the magistrate judge, sitting by consent of the parties and by designation of the district court under 28 U.S.C. § 636(c), entered an order affirming the ALJ's decision denying plaintiff's application for SSI benefits. This appeal followed.

## II. Onset Date.

To be entitled to SSI benefits, plaintiff must show that she was disabled between November 24, 1997, the date she filed her application for SSI benefits, and February 9, 1999, the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330, 416.335, and 416.1476(b)(1). In addition, under the controlling regulations, SSI benefits cannot be awarded retroactively. *Id.*, § 416.335; SSR 83-20, 1983 WL 31249, at *1, *7 (1983); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995). Consequently, November 24, 1997 was the earliest date that plaintiff could have been eligible to receive SSI benefits.[2] Like the ALJ, however, we will examine medical evidence generated prior to November 1997, "but only for purposes of

---

[2] As noted by the ALJ, plaintiff filed a prior application for benefits, and that application was denied on October 29, 1996. *See* Aplt. App., Vol. 2 at 17. The ALJ therefore concluded that "[t]he beginning date for the [disability] period under consideration . . . is October 30, 1996, the day after the date [plaintiff] previously was denied benefits." *Id.* The ALJ was mistaken, however, because, under the controlling regulations, plaintiff cannot receive benefits for any period prior to the filing of her application for SSI benefits. *See Kepler*, 68 F.3d at 389 (citing 20 C.F.R. § 416.335).

establishing a baseline from which to evaluate [plaintiff's] medical status."  Aplt.

App., Vol. 2 at 18.

### III. Standard of Review.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

### IV. Analysis.

In this appeal, plaintiff claims the ALJ erred at step three in determining that her back impairment did not meet or equal Listing 1.05C. She also claims the ALJ erred at step five by failing to consider hand problems from which she allegedly suffers, and the related physical limitations, in combination with her back impairment, and by failing to propound a hypothetical question to the vocational expert that included her hand limitations. Having reviewed the ALJ's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards, we conclude that plaintiff's claims are without merit.

**A. Listing 1.05C and the ALJ's Step-Three Finding.**

Listing 1.05C provides as follows:

> C. Other vertebrogenic disorders (e.g., herniated [disk], spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C.

Plaintiff has the "step three burden to present evidence establishing her impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, plaintiff must show that her back impairment "meet[s] *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In addition, the determination of whether plaintiff's back impairment meets or equals Listing 1.05C must be based solely on medical findings. *See Kemp v. Bowen*, 816 F.2d 1469, 1473 (10th Cir. 1987); 20 C.F.R. §§ 416.925-26. As we have explained, at step three,

> the ALJ must determine that the "medical findings" are at least equal in severity and duration as those in the listed findings. 20 C.F.R. § 404.1526(a). "Medical findings" include symptoms (the claimant's

own description of his impairments), signs (observations of anatomical, physiological and  psychological abnormalities which are shown by clinical diagnostic techniques) and laboratory findings. 20 C.F.R. § 404.1528 . . . .  However, the claimant's descriptions, alone, are not enough to establish a physical or mental impairment. *Id.* at § 404.1528(a).

*Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988); *see also* 20 C.F.R. § 416.926(b) (stating that the Commissioner "will always base [the] decision about whether [a claimant's] impairment[] is medically equal to a listed impairment on medical evidence only").

The ALJ found that plaintiff's lumbar spine impairment did not meet or equal Listing 1.05C "because the objective medical evidence does not show all of the required neurological deficits."  Aplt. App., Vol. 2 at 21.  Relying on our decision in *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), plaintiff argues that the ALJ's step-three finding constitutes reversible error because he did not discuss the evidence in the administrative record that supports his finding. We agree with plaintiff that the ALJ should have discussed the medical evidence in the record that supports his step-three finding.  Under the circumstances of this case, however, there is no reversible error.

First, the situation here is a far cry from the situation in *Clifton* where the ALJ did not "even identify the relevant Listing or Listings; he merely stated in a summary conclusion that appellant's impairments did not meet or equal any Listed

Impairment." *Clifton*, 79 F.3d at 1009. Instead, in this case, we have a specific step-three finding by the ALJ.

Second, although the ALJ's finding is expressed in terminology which does not precisely mirror the terminology used in Listing 1.05C, it is clear the ALJ directly addressed the specific medical criteria that is set forth in the listing. Specifically, in referring to a lack of "the required neurological deficits," we have no doubt the ALJ was addressing whether plaintiff suffered from "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C(2); *see also The Merck Manual of Diagnosis and Therapy*, § 14 at 1490 (17th ed. 1999) (discussing "objective neurologic deficits (weakness, sensory deficit)" that can be caused by lumbar spine radiculopathies).[3] Thus, unlike in *Clifton*, this case does not involve "a bare conclusion [that] is beyond meaningful judicial review." *Clifton*, 79 F.3d at 1009. To the contrary, the ALJ's decision contains "an explicit, definitive basis for rejection of the listing[]." *Fischer-Ross*, 431 F.3d at 734.

---

[3]     "Radiculopathy" is a "[d]isorder of the spinal nerve roots." *Stedman's Medical Dictionary* at 1503 (27th ed. 2000); *see also The Merck Manual*, § 14 at 1488 ("Nerve root dysfunction, which is usually secondary to chronic pressure or invasion of [a spinal nerve] root, causes a characteristic radicular syndrome of pain and segmental neurologic deficit.").

Finally, as set forth below, the ALJ's step-three finding is supported by substantial medical evidence in the record, and the most important evidence is contained in the medical records of plaintiff's treating orthopedist, Dr. Mark A. Hayes. Although the ALJ did not address a significant part of Dr. Hayes' medical records in his decision (specifically, the medical records from August and September 1998), the ALJ noted that Dr. Hayes "is the . . . treating physician who performed [plaintiff's back] surgery and then treated her," Aplt. App., Vol. 2 at 20, and the ALJ stated that he was "giv[ing Dr. Hayes'] medical opinions full weight," *id.* As a result, unlike in *Clifton*, the ALJ in this case specifically adopted medical opinions that support his step-three finding. Moreover, for purposes of this appeal, it does not matter that the ALJ referred to Dr. Hayes' opinions outside of the context of his step-three analysis. *Cf. Fischer-Ross*, 431 F.3d at 734 ("*Clifton* does not remotely suggest that findings at other steps of an ALJ's analysis may *never* obviate the lack of detailed findings at step three. *Clifton* sought only to ensure sufficient development of the administrative record and explanation of findings to permit meaningful review.").

**B. Substantial Evidence Review.**

Although Listing 1.05C does not define the term "vertebrogenic disorders," the listing begins by specifically referring in parenthesis to two such disorders:

a herniated spinal disk and spinal stenosis.[4]  In addition, another section of the listing regulations states that "vertebrogenic disorders . . . result in impairment because of distortion of the bony and ligamentous architecture of the spine *or impingement of a herniated [disk] or bulging annulus on a nerve root*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B (emphasis added).  For purposes of this case, we are dealing with an alleged vertebrogenic disorder of the latter type.  As a result, the specific issue before the ALJ was whether plaintiff suffered during the relevant time frame from a spinal "[ne]rve root dysfunction . . . [that was causing] a characteristic radicular syndrome of pain and segmental neurologic deficit." *The Merck Manual*, § 14 at 1488.

We conclude that there is substantial medical evidence in the administrative record to support the ALJ's finding that plaintiff did not suffer from radicular neurological deficits caused by an impingement of a spinal nerve root during the relevant time frame.  Most importantly, while there is no question that plaintiff suffered from a herniated lumbar disk at the time Dr. Hayes and Dr. Kosmoski, a neurosurgeon, performed surgery on her lumbar spine in February 1996, *see* Aplt. App., Vol. 2 at 154, 155, 101, 103, 150, 105-06, 107-08, 111-13, 109-10, neither

---

[4]     In 1995, an MRI scan of plaintiff's lumbar spine showed no evidence of any spinal stenosis,   *see* Aplt. App., Vol. 2 at 155, and there is no indication in plaintiff's medical records that she suffered from spinal stenosis during the relevant time frame.

Dr. Hayes nor Dr. Kosmoski diagnosed plaintiff as suffering from radicular neurological deficits, either before or after the surgery.

Prior to plaintiff's surgery, Dr. Hayes reported that she had "no motor deficits." *Id.* at 156. He also reported that, although an "MRI scan showed possibility of a protruding disk herniation in the midline at L4-5," plaintiff's "primary complaint of pain is discogenic rather than radicular." *Id.* at 154. Dr. Hayes thus concluded that he "felt her pain was discogenic rather than radicular in character." *Id.* at 105. Similarly, in the consultation report that he prepared prior to plaintiff's surgery, Dr. Kosmoski reported that there was "no evidence of radicular findings." *Id.* at 107.

While plaintiff underwent a second surgical procedure in February 1997, the second surgery had nothing to do with a herniated disk or any related radicular syndrome or disorder. Instead, Dr. Hayes performed the second surgery due to the fact that plaintiff had developed "postoperative bursitis" in the area where the first surgery had been performed, and she therefore needed to have the "hardware" that was implanted in her spine during the first surgery removed. *Id.* at 143, 129-30, 131-32, 128. The record also indicates that the second surgery was successful. In fact, in March 1997, Dr. Hayes reported that plaintiff "seem[ed] to be doing quite well," and he released her from his care, stating only

that she had "limitations of no lifting or carrying of over 40 to 50 pounds and no repetitive lifting of over 40 to 50 pounds." *Id.* at 139.

Subsequently, in August 1998, Dr. Hayes noted that plaintiff's condition had worsened since her release from his care in March 1997, and he reported that she had "motor deficits new from her last visit," *id.* at 194, which included "persistent dysesthesia down the leg, right and left," *id.* at 193. Despite these symptoms, however, an MRI scan taken at the time "show[ed] no recurrent disc herniation." *Id.* In addition, although Dr. Hayes expressed concern in August 1998 about a possible "neurological lesion," *id.*, plaintiff's subsequent neurological evaluation, which included an electromyogram and a nerve conduction study, "[came] back satisfactory," *id.* at 192. Dr. Hayes thus concluded that "[n]o further surgical treatment [was] necessary." *Id.*

To support her challenge to the ALJ's listing finding, plaintiff is also relying on medical evidence that was generated after the ALJ issued his decision. Specifically, on March 4, 1999, less than a month after the ALJ issued his decision denying benefits, plaintiff was examined by Dr. Hastings, an internist, and an "internist evaluation" from Dr. Hastings dated March 8, 1999 was submitted to and considered by the Appeals Council. *Id.* at 7, 9, 11, 215-19. In his evaluation, Dr. Hastings reported that plaintiff's back problems had worsened "over the last three to four months," *id.* at 218, and he noted that plaintiff was

complaining of radicular symptoms, including "burning, tingling and paresthesias into the lower extremities bilaterally," *id.* at 217. Plaintiff was also complaining "of weakness with her legs going out and difficulty ambulating." *Id.*

"After taking a history, reviewing available medical records, and performing a physical examination of [plaintiff]," Dr. Hastings stated that it was his "medical opinion that [plaintiff] should undergo further diagnostic testing regarding [her] radicular symptomatologies." *Id.* at 219. Dr. Hastings therefore recommended that plaintiff "undergo further testing to include a CT myleogram and/or an awake lumbar discogram to determine whether or not [she] does in fact have radiculopathy as a result of a persistent disc injury." *Id.* The administrative record does not contain any records pertaining to such testing, however. Consequently, for purposes of this case, Dr. Hastings' concern about plaintiff's "radicular symptomatologies" was never confirmed by objective medical evidence. Quite to the contrary, as he explicitly noted in his evaluation, Dr. Hastings was still in the process of trying to confirm "whether or not [she] does in fact have radiculopathy." *Id.* Thus, having considered Dr. Hastings' March 8, 1999 evaluation as "part of the administrative record to be considered when evaluating [the ALJ's] decision for substantial evidence," *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994), we conclude that the evaluation is insufficient to support a remand on the step-three listing issue.

## C. Alleged Hand Limitations.

In March 1998, plaintiff was examined by a consulting examiner, Dr. Dalessandro, a general practitioner, and he found that both her right and left hands had a grip strength of fourteen kilograms. *See* Aplt. App., Vol. 2 at 164. Based on a medical article from *The Journal of Hand Surgery* that was not before the ALJ or the Appeals Council, but that she attached to her district court brief, *see* R., Doc. 16, plaintiff argues that Dr. Dalessandro's finding translates into a grip strength that "is from 38% to 41% of a normal female's grip strength," Aplt. Opening Br. at 27. Plaintiff also testified at the hearing before the ALJ that she experiences numbness in her hands on a daily basis, and that she "can't lift very much with these hands. Not like I used to." Aplt. App., Vol. 2 at 227.

Plaintiff claims that "her hand limitations, as evidenced by the reduced grip strength bilaterally, . . . constitute[] a 'severe' impairment at step two (2) of the sequential analysis." Aplt. Opening Br. at 25-26. She further claims that "[t]he ALJ ignored the importance of [her] hand impairments as an additional impairment that would impact negatively upon her ability to work." *Id.* at 25. Plaintiff also claims that, even if her hand limitations do not qualify as a severe impairment at step two of the evaluation process, the ALJ was still required to consider her hand limitations in combination with her back impairment in determining if she was disabled.

-14-

We conclude that the ALJ did not err in failing to consider plaintiff's alleged hand limitations in combination with her back impairment. To begin with, as pointed out by the ALJ, "there is no objective medical evidence [in the record] showing a complaint of or treatment for numbness in the hands."[5] Aplt. App., Vol. 2 at 20. In addition, there is no objective medical evidence in the record supporting plaintiff's claim that her grip strength limits her ability to perform the jobs identified by the ALJ at step five of the evaluation process.[6]

In her opening brief, plaintiff cites to medical records of Dr. Cochran, the orthopedic surgeon who removed a ganglion cyst from her right wrist in 1996, claiming that the records document the pain associated with the cyst and the fact that the cyst was irritating sensory nerves. *See* Aplt. Opening Br. at 26-27. But the medical records of Dr. Cochran that plaintiff is relying on relate to the period before she had the cyst surgically removed, *see* Aplt. App., Vol. 2 at 121-22, 126, and she has made no showing that any of the problems persisted after the surgery.

---

[5] The medical records from the Green Country Free Clinic, which were not before the ALJ, but were reviewed by the Appeals Council, *see* Aplt. App., Vol. 2 at 7, 9, 10, indicate that plaintiff complained of right wrist, elbow, arm, and shoulder pain in October 1998, *id.* at 196. The records do not contain any specific medical findings by the physicians who treated plaintiff for these complaints, however. Instead, the records state only that she had "[p]ossible . . . Carpel Tunnel." *Id.*

[6] In fact, in the "Hand/Wrist Sheet" that he completed in March 1998, Dr. Dalessandro reported that plaintiff could manipulate small objects and effectively grasp tools. *See* Aplt. App., Vol. 2 at 167.

In fact, the last medical record from Dr. Cochran, which is dated January 20, 1997, states that plaintiff was "doing well . . . . [with] no signs of re-occurrence at this point. No return appointments made." *Id.* at 125.

Finally, plaintiff is correct that the ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. The problem here, however, is that plaintiff has overlooked the threshold requirement that "[a] physical . . . impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*, § 416.908. Because plaintiff's subjective claims regarding the physical limitations caused by her alleged hand problems are not supported by any objective medical evidence, the ALJ did not err in failing to consider her hand problems as an impairment, and he was not required to consider the alleged hand limitations in combination with plaintiff's back impairment. For the same reason, the ALJ was not required to include the alleged hand limitations in the hypothetical question he posed to the vocational expert. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (holding that hypothetical questions to vocational experts "need only reflect impairments and limitations that are borne out by the evidentiary record").

-16-

The judgment of the district court is AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge