**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RHONDA J. FAGAN,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,[*]
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 06-6261
(D.C. No. CIV-05-174-F)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[**]

---

Before **McCONNELL**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

Rhonda J. Fagan appeals the district court's order affirming the

Commissioner's denial of her application for social security disability insurance

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for Jo Anne B. Barnhart as appellee in this appeal.

[**] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

benefits (DIB) under Title II of the Social Security Act.  We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.  We affirm.

**I.**

Ms. Fagan applied for DIB in fall 2002, alleging an inability to work since December 20, 2001, due to obesity, polycystic ovarian syndrome (PCOS), and confusion.  The agency denied her application initially and on reconsideration.

Ms. Fagan then received a de novo hearing before an administrative law judge (ALJ), at which, accompanied by counsel, both she and a vocational expert (VE) testified.  The ALJ denied Ms. Fagan benefits at step five of the applicable five-step sequential evaluation process.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  At step one, the ALJ concluded Ms. Fagan had not engaged in substantial gainful activity during the time frame relevant to this case.[1]  At steps two and three, the ALJ determined Ms. Fagan suffered from severe impairments (obesity, hyperalimentation, and PCOS), but concluded that they did not meet or equal, singly or in combination, any impairment described in the listing of impairments.  The ALJ also found that although Ms. Fagan experiences some pain and discomfort, her allegations of disabling pain were not supported by credible facts and findings, and her allegations regarding her

---

[1]     The relevant time frame is from December 20, 2001, Ms. Fagan's alleged onset date, through August 27, 2004, the date of the Commissioner's final decision.

functional limitations were not totally credible.  At step four, the ALJ found Ms. Fagan retained the residual functional capacity (RFC) to perform light work (limited by her ability to only occasionally perform all postural activities), but concluded that she could not return to her past relevant work because that work required exertion beyond her RFC.  And, at step five, after considering her RFC, age, education, work experience, the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, Rule 201.29, and the testimony of the VE, the ALJ denied benefits, concluding that Ms. Fagan could perform other work that exists in significant numbers in the national economy.

The Appeals Council denied Ms. Fagan's request for review, making the ALJ's decision the Commissioner's final decision.  *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2006).  Ms. Fagan then filed a complaint for judicial review in federal district court, and the case was referred to a magistrate judge.  The magistrate judge recommended the district court affirm the denial of benefits, and the district court adopted the recommendation.  Ms. Fagan appeals.

**II.**

Ms. Fagan asserts that (A) the ALJ failed to properly consider her obesity in combination with her other impairments, and (B) substantial evidence does not support the ALJ's conclusion that she retained the RFC to perform light work (limited by her ability to only occasionally perform all postural activities).  "We review the [C]ommissioner's decision only to determine whether substantial

evidence supports that decision and whether the applicable legal standards were applied correctly." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

**A.**

Ms. Fagan's first argument is premised on Social Security Ruling (SSR) 02-01p, 2000 WL 628049.[2] SSR 02-01p states that obesity is a medically determinable impairment that an ALJ must consider in evaluating disability, that the combined effects of obesity and other impairments can be greater than the effects of each single impairment considered individually, and that obesity must be considered when assessing RFC. *Id.* at \*1, \*5-6, \*7. It is Ms. Fagan's position that the ALJ erroneously failed to consider her obesity in combination with her other impairments, asserting that her "impairments . . . might be expected to be aggravated by the effects of [her] massive obesity." Aplt. Opening Br. at 18.

Although the ALJ did not reference SSR 02-01p or explicitly examine the impact of Ms. Fagan's obesity on each of her (non-severe) impairments, we have reviewed the record and do not believe these omissions require a remand under the facts of this case. The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, *see Clifton v. Chater*, 79 F.3d 1007, 1009

---

[2] Social security rulings do not carry the force of law; however, they are generally entitled to deference because they constitute the Social Security Administration's interpretations of its own regulations and the statute that it administers. *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

(10th Cir. 1996),[3] and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments, *see*, *e.g.*, Aplt. Opening Br. at 21.  SSR 02-01p, however, specifically prohibits adjudicators from engaging in such speculation:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.

---

[3]     In particular, the ALJ discussed Ms. Fagan's arm pain consistent with neuropathy or paresthesia; her back pain, "which is aggravated by her weight"; her diagnoses of PCOS, severe obstructive sleep apnea, and "degenerative narrowing of the lumbosacral junction with grade I forward displacement of L5 with respect to S1."  Aplt. App., Vol. II at 48.  He also observed that Ms. Fagan, who stands five feet two inches, weighed three hundred thirty-six pounds in September 2002, and that the *only functional limitation imposed by a treating physician* was Dr. Clapp's recommendation she "limit repetitive motion for her arm pain."  *Id.*; *see also id.*, Vol. II at 168, 173.  After concluding that her severe impairments did not meet or equal, singly or in combination, any impairment described in the listing of impairments, the ALJ explained his determination, stating:

> The claimant has had complaints of back pain and [has been] diagnosed with some degenerative narrowing.  On examination there [are] no neurological deficits, she has no extreme limitation of motion, there is no report of her having extreme difficulty ambulating and [she] does not use an assistive device.  Her main problem is obesity.  The pain in the upper right extremity has been conservatively treated with ice and Ibuprofen.  She does not have evidence of [an] inability to perform fine and gross movements effectively.

*Id.*, Vol. II at 48.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1) ("Inability to ambulate effectively means an extreme limitation of the ability to walk.").

2000 WL 628049, at *6. Further, in assessing Ms. Fagan's RFC the ALJ imposed postural limitations and limited her to light and sedentary work, Aplt. App., Vol. II at 52, consistent with the reviewing state agency's physician's assessment, which assessment was apparently predicated on Ms. Fagan's "obesity (BMI 62.9)," her history of PCOS, and her treating physicians' records reflecting pelvic pain, *id.*, Vol. II at 156.

We also reject Ms. Fagan's contention, intertwined in her argument concerning SSR 02-01p, that the ALJ erroneously failed to order a consultative physical exam. An ALJ "has broad latitude in ordering a consultative examination." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Generally, only where "there is a direct conflict in the medical evidence requiring resolution or where the medical evidence in the record is inconclusive, [is] a consultative exam . . . required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citations omitted). In this case, Ms. Fagan fails to identify a direct conflict in the medical evidence (nor have we found one), and despite her mention of x-rays (presumably those taken of her back on June 16, 2004, Aplt. App., Vol. II at 167), "and other evidence," Aplt. Opening Br. at 22, she sheds no light on why the medical evidence was inconclusive such that the ALJ should have ordered a consultative exam. *See Hawkins*, 113 F.3d at 1168 ("The duty to develop the

record is limited to fully and fairly developing the record as to material issues." (quotations and brackets omitted)).

Similarly, Ms. Fagan's criticism of the ALJ's assessment of her ability to ambulate, which is also intertwined in her argument regarding SSR 02-01p, lacks merit. On this point, she apparently argues that but for the ALJ's misapprehension of the evidence, she may have been able to meet a listing at step three because she "is unable to 'sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.'" Aplt. Opening Br. at 23 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(2)). The primary evidence in support of this proposition is Ms. Fagan's administrative hearing testimony that the ALJ found to be not totally credible. *Cf. Diaz*, 898 F.2d at 777 (noting that uncorroborated subjective evidence is not sufficient to establish disability). The only objective evidence supporting her claim is treating physician Clapp's examination of her right calf on April 24, 2004, upon her report of "unbearable" pain "if she tries to walk or stand." Aplt. App., Vol. II at 172. Based on his exam, he diagnosed her with "Muscle strain/Achilles tendinitis," for which he prescribed anti-inflammatories, ice and/or heat, limited activity, and losing weight. *Id.*, Vol. II at 171, 172. No further difficulty with ambulation is reported in any subsequent medical records, nor is there any indication such difficulty was expected to last at least twelve months. *See* 20 C.F.R. § 404.1509.

**B.**

Ms. Fagan's second argument on appeal, like her first, contains several interwoven sub-arguments. We address each in turn.

She first claims that the ALJ erroneously "disregard[ed]" her diagnosis of abdominal hernia, thereby failing to explain why it "could not be associated with [her] complaints of pain" and why it did not limit her ability to perform light work. Aplt. Opening Br. at 29. The ALJ, however, specifically noted that the record contained a 2002 "opinion that she had a ventral wall hernia," Aplt. App, Vol. II at 48, he just did not find any resulting restrictions or limitations. As far as we can tell, no resulting restrictions or limitations are contained in the medical record and Ms. Fagan does not direct our attention to any.[4] Under the circumstances then, we are unpersuaded by Ms. Fagan's argument. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) ("We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations."); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988) (stating that a diagnosis does not "automatically mean" that a claimant "is disabled").

---

[4] The medical record contains only two other references to a hernia, *see* Aplt. App., Vol. II at 144 (recommending "CT" "looking for herniation"); *id.*, Vol. II at 176 (stating that "umbilical hernia was noted at last visit," but treatment notes from that visit are not part of the medical record).

She next claims that the ALJ neglected his "duty to discuss" her diagnosis of sleep apnea and explain his "disregard" of that diagnosis. Aplt. Opening Br. at 29-30. We disagree. *See Bernal*, 851 F.2d at 301. The ALJ specifically observed that Ms. Fagan's July 2003 sleep study revealed sleep apnea and that arrangements were made for home trial of a nasal CPAP, Aplt. App., Vol. II at 47, "therapy [that] was well tolerated," *id.*, Vol. II at 164. Her medical records from after July 2003 do not show that she sought any additional treatment for sleep apnea and there is no indication it thereafter caused any resulting restrictions or limitations. Her contrary suggestion is unsupported by the record, and as such, the ALJ's brief discussion of sleep apnea was not erroneous. *See Howard*, 379 F.3d at 948.

Ms. Fagan also contends that the ALJ failed to develop the record concerning her "possible mental impairment," asserting in conclusory fashion that the ALJ erroneously failed to hold the record open or obtain mental health treatment notes, order a consultative mental examination, or re-contact treating physician Clapp to clarify why he prescribed her the antidepressant Effexor. Aplt. Opening Br. at 30.[5] As she states, treating physician Clapp did note on

[5] We note that the ALJ asked counsel whether the record needed to be held open. Counsel responded: "Judge, I'm going to make a request, possibly at the end of the case, that you may want to leave it open, but I'll leave that as your decision." Aplt. App., Vol. II at 181. The Judge replied, "Okay, then we'll

(continued...)

several occasions her flat affect and depressed mood, for which he prescribed Effexor. And, she testified at her administrative hearing on August 24, 2004, that she had begun seeing a counselor one or two weeks earlier, but she acknowledged that there were not "any records" from her treatment, and she had not "even got[ten] all the paperwork filled out, it's so new." Aplt. App., Vol. II at 191. Further, she is silent regarding what evidence would have been submitted if the record had been held open and there is no indication she or her counsel ever tried to obtain or submit the mental health treatment notes she claims the ALJ should have obtained, thereby casting considerable doubt on the relevance of the evidence and existence of any prejudice she may have suffered from the ALJ's not obtaining it. *See Hawkins*, 113 F.3d at 1169 (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)); *see also id.* at 1164 ("It is beyond dispute that the burden to prove disability . . . is on the claimant."); 20 C.F.R. § 404.1512(a) ("[Y]ou must bring to our attention everything that shows that you are . . . disabled."). We therefore conclude that the ALJ did not commit reversible error by failing to hold the record open or obtain Ms. Fagan's unidentified mental health treatment notes. We likewise reject her contentions that the ALJ should have ordered a consultative mental examination and

---

[5](...continued)
wait." *Id.* At the close of the hearing, counsel did not ask the ALJ to hold the record open.

-10-

re-contacted Dr. Clapp. As previously noted, an ALJ "has broad latitude in ordering a consultative examination," *Diaz*, 898 F.2d at 778, and Ms. Fagan fails to identify a direct conflict in the medical evidence or explain why the medical evidence was inconclusive such that the ALJ should have ordered a consultative exam. *See Hawkins*, 113 F.3d at 1166. Similarly, she fails to identify a conflict, ambiguity, or absence of pertinent information in a report from Dr. Clapp, such that the ALJ should have re-contacted him. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (stating "it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty" (quotations and brackets omitted)).

Finally, in a related argument, Ms. Fagan asserts that the ALJ erred by not obtaining "the report from her neurological evaluations," because her neurologic impairments allegedly caused her arm pain and recurrent headaches. Aplt. Opening Br. 30-31. Again, there is no indication either Ms. Fagan or her counsel ever tried to obtain or submit the report she claims the ALJ should have obtained. *See Hawkins*, 113 F.3d at 1169 (citing *Shannon*, 54 F.3d at 488); *id.* at 1164; 20 C.F.R. § 404.1512(a). Indeed, it is unclear whether "the report" even existed at the time of the hearing. *See* Aplt. App., Vol. II at 173-74, 171, 170. We therefore reject this allegation of error.

## III.

The record contains substantial evidence to support the Commissioner's finding of nondisability and the correct legal standards were applied.  The judgment of the district court is AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge