**Leata HEDSTROM, a/k/a Leata McDermott, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Service, Defendant.**

**Civ. A. No. 90–B–909.**

United States District Court, D. Colorado.

Feb. 11, 1992.

James W. Dean, Jeffrey A. Link, Legal Aid Society of Metropolitan Denver, Inc., Denver, Colo., for plaintiff.

Deana R. Ertl–Lombardi, Asst. Regional Counsel, Dept. of Health and Human Services, Kathleen L. Torres, Asst. U.S. Atty., Denver, Colo., for defendant.

MEMORANDUM OPINION
AND ORDER

BABCOCK, District Judge.

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the Secretary of Health and Human Services' (Secretary) decision that she is not disabled and, therefore not entitled to supplemental security

income benefits. Having reviewed the record and the briefs under the substantial evidence standard, I hold that the Secretary's determination that there exists substantial gainful work in the national economy which plaintiff can perform is not supported by substantial evidence. Because additional fact-finding would serve no purpose here, the Secretary's decision is reversed and the case remanded with instructions to award benefits.

## I.

Plaintiff is a 34 year old woman living in Leadville, Colorado. She is divorced and has custody of her two children. Plaintiff has an eleventh grade education and has no work experience outside her home.

Plaintiff began treatment for problems with her eyes in June, 1977. She was diagnosed as having ocular histoplasmosis with involvement of the macula in the right eye and polymacular involvement in the left eye. In lay terms, the blood vessels in her eyes were hemorrhaging. At that time, she was blind in the right eye and had decreased vision in the left. Because of an active coreoretinal lesion in her left macula, plaintiff was treated with argon laser photocoagulation. Over the following year, the vision in her left eye stabilized at 20/40 with correction.

In 1983, plaintiff complained of "distortion" of objects viewed through her left eye, and it appeared that the histoplasmosis had reactivated. Plaintiff's ophthalmologist determined that further photocoagulation could not be done so she was treated with high doses of steroids to quiet the lesion. The steroids were stopped in 1984, and at that time plaintiff had "distorted 20/40 vision" in her left eye.

In January, 1987, plaintiff was seen by Dr. Stephen Kesselman. He determined:

The visual acuity in the left eye has remained at 20/40 to 20/40 minus, but it is a distorted 20/40 with portions of the letters missing when she reads the wall chart. It would be extremely difficult for Mrs. McDermott to do anything that requires precision work, and she has no depth perception because of the poor vision in the right eye. This condition is permanent and the visual acuity in the left eye can deteriorate.

*See,* Transcript at 184. Later that year, plaintiff again saw Dr. Kesselman, complaining of decreased vision in her left eye. He determined that the left macula was scarred. At that time, the vision in plaintiff's left eye was 20/50 with correction. In a report dated June 15, 1988, Dr. Kesselman stated that the visual acuity in plaintiff's left eye was "20/60 [corrected], but it is a distorted 20/60 because of the macula scar." Transcript at 215.

At her hearing, plaintiff testified that the vision in her left eye is blurred and she is only able to read a page when it is held one-half inch from her face. A Social Security employee corroborated plaintiff's inability to read and sign her initial application for benefits without reading it sideways and holding it an inch from her face. Transcript at 166. Plaintiff also testified that after 30 minutes of use, her eyes began to ache, throb, and tear, and her vision became more hazy.

Plaintiff filed her claim for supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.,* on February 2, 1987. Her claim for benefits was denied, and she requested a hearing before an ALJ. The hearing was held on April 29, 1988. The ALJ upheld the previous denial benefits, finding a significant number of jobs in the national economy that plaintiff could perform with her limitations. Plaintiff appealed to the Appeals Council, which reversed and remanded plaintiff's claim back to the ALJ. The Appeals Council found that the ALJ's decision was not supported by substantial evidence because no vocational rehabilitation expert testified that plaintiff could perform a substantial number of jobs existing in the national economy.

A second hearing was held before the ALJ on August 15, 1989, and he again held that plaintiff was ineligible for SSI benefits. In light of the Appeals Council's decision, the ALJ retained a vocational expert, William Hartwick, who testified, in response to the ALJ's hypothetical question,

that plaintiff could perform the jobs of packager and assembler and that these jobs exist in substantial numbers in the national economy. However, the hypothetical question directed Hartwick to assume that "her remaining vision on the left with best correct is sufficient for the vast majority of jobs existing in the national economy. Her visual impairment does not reduce her vocational potential." Transcript at 89. Further, in this hypothetical, the ALJ directed Hartwick to disregard plaintiff's complaints of blurring, aching, and throbbing in her left eye. In response to an earlier hypothetical question that did not contain these assumptions, Hartwick testified that there were no jobs plaintiff could perform.

Further, the ALJ found that plaintiff's complaints of blurred vision and aching, throbbing eyes were exaggerated and not credible. He found that she suffered from situational depression but discounted her other emotional and psychological complaints as not impairing her ability to work.

## II.

■ In reviewing a decision of the Social Security Administration, district courts are limited to determining whether the decision is based on substantial evidence. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). A district court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Id.* To find that the Secretary's decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. *Id.* Substantial evidence is more than a scintilla of evidence, but less than a preponderance of the evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988).

■ Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion by the ALJ. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.1990); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). The substantial evidence test does not permit a simple search of the record for isolated bits of evidence which

support a preconceived conclusion. Rather, the record as a whole must be considered. *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir.1987). Although the ALJ is in the best position to assess the credibility of the claimant, the district court cannot merely rubber stamp his decision. *Pettyjohn v. Sullivan*, 776 F.Supp. 1482, 1485 (D.Colo.1991).

■ Title XVI of the Social Security Act entitles every person who is disabled and meets the income requirements to SSI benefits. 42 U.S.C. § 1382. A person is considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). Furthermore, an individual

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. § 1382c(a)(3)(B).

■ Under the Act, the claimant bears the initial burden of proving a physical or mental impairment that prevents her from engaging in her prior work activity. *Gossett*, 862 F.2d at 804. Once the claimant proves that, the burden of proof shifts to the Secretary to show that, given the claimant's impairments, there exists other employment in the national economy. *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 776 (10th Cir.1990). Because plaintiff here did not engage in prior work activity and because of the severity of her physical impairment, both parties agree that the Secretary bears the burden of showing that she is not disabled.

In determining whether the Secretary met this burden, the ALJ at the second hearing relied exclusively on Hartwick's expert testimony that plaintiff could perform the jobs of packager or assembler. Indeed, the record is devoid of other evidence on

the crucial question of whether plaintiff can perform work existing in the national economy. However, Hartwick's testimony on this pivotal issue came only in response to a hypothetical question posed by the ALJ.

■ A vocational expert's response to a hypothetical question constitutes substantial evidence only where the question sets forth precisely all of the claimant's physical and mental impairments. *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir.1984); *Ledoux v. Schweiker*, 732 F.2d 1385, 1388 (8th Cir.1984); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). *Cf., Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir.1990). Thus, if the hypothetical question in this case is defective for not setting forth all of plaintiff's impairments, then the ALJ's decision is not supported by substantial evidence and must be reversed.

■ Here, the ALJ told the vocational expert to assume that plaintiff's visual impairment would not significantly reduce her vocational potential and that her vision was sufficient for the vast majority of jobs existing in the national economy. He also told the expert to assume that claimant did not have problems with blurring and that she did not have to hold a page within an inch of her face to read. Finally, he told the expert to ignore plaintiff's complaints of aching, throbbing, and tearing in her eyes after 30 minutes of use. None of these assumptions in the hypothetical question are supported by substantial evidence in the record.

Dr. Kesselman's medical records and plaintiff's own testimony constitute the only evidence concerning the nature and severity of plaintiff's visual impairment. Dr. Kesselman's records do not indicate that plaintiff's remaining vision in her left eye was sufficient to perform "the vast majority" of jobs existing in the national economy. Likewise, his records do not support the ALJ's statement that plaintiff's remaining vision would not significantly effect her vocational potential. Indeed, Dr. Kesselman's records indicate the opposite. The evidence is uncontradicted that claimant would have "extreme difficulty" doing anything that requires precision work or

depth perception. Further, the evidence is undisputed that claimant is blind in her right eye and only has distorted 20/60 vision, with correction, in her left eye.

The ALJ directed the vocational expert to assume that plaintiff's visual impairment would not significantly reduce her vocational potential and that her vision was sufficient for the vast majority of jobs existing in the national economy. There is nothing in the record to support this predicate to the ALJ's hypothetical. Certainly, the ALJ is not qualified to make this independent determination and, indeed, the ALJ's assumption of this role at the first hearing in significant part caused the Appeals Council to reverse and remand the first denial. Nor was the vocational expert qualified to fill the void. He is not an ophthalmologist. Here, the ALJ effectively directed the vocational expert's opinion by improperly supplying as predicates to his hypothetical his preconceived and unsupported conclusions that plaintiff's visual impairment would not significantly reduce her vocational potential and that her vision was sufficient for the vast majority of jobs in the national economy. The decision in this case cannot rest on such a sophistic hypothetical.

The ALJ also found claimant's reports of blurred vision not credible and, therefore, excluded this impairment from the hypothetical question. Although credibility determinations are committed to the trier of fact, the ALJ's call here is overwhelmed by other evidence. Dr. Kesselman's records are unequivocal and uncontradicted that claimant's remaining vision in her left eye is "distorted." The difference between "distorted" vision and "blurred" vision is a distinction without a difference and merely semantic.

In support of his findings, the ALJ recited a list of activities plaintiff testified she could perform. However, he ignored other relevant testimony on those same activities. For example, the ALJ recited that claimant was taking two classes at Colorado Mountain College, but he ignored plaintiff's testimony that the classes were only two hours twice a week and that she had a reading aide assist her. His reliance on daily activities falls beneath the substantial evidence standard. *See, Frey v. Bowen*, 816 F.2d

508, 517 (10th Cir.1987), (ALJ reversed for relying on a claimant's daily activities to undercut his credibility and subjective complaints of pain where the activities were relatively minor and did not contradict the subjective complaint).

The ALJ discounted claimant's testimony of pain in her eyes after 30 minutes of use and excluded this impairment from the hypothetical question. Recognizing that pain is inherently subjective, the court in *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir.1987), set out a framework for assessing complaints of disabling pain. First, the court requires an ALJ to determine whether there is a medically determinable nexus between the claimant's physical impairment and the alleged pain. The decision of the ALJ here contains no such finding. Once again, the ALJ's assumption in the hypothetical question that claimant does not have pain in her eyes is not supported by substantial evidence.

The sole evidence on whether plaintiff can perform jobs existing in the national economy stems from Hartwick's response to a defective and improper hypothetical question. Therefore, the ALJ's decision that the Secretary met his burden of proof is not supported by substantial evidence and it must be reversed.

Finally, in response to the ALJ's first and only proper hypothetical question that included all of plaintiff's physical impairments, Hartwick testified that there are no jobs she could perform. Thus, I conclude that additional fact-finding is unnecessary and this case is remanded with instructions that claimant's application for SSI benefits be granted. *See, Harris v. Secretary of Health & Human Services*, 821 F.2d 541, 545 (10th Cir.1987).

Accordingly, IT IS ORDERED THAT:

(1) The Secretary's decision that claimant is not disabled is REVERSED;

(2) The case is remanded to the Secretary with instructions to award benefits pursuant to claimant's application.