Jeffrey Allen **RYAN**, Plaintiff,

v.

Carolyn W. **COLVIN**, Acting Commissioner of Social Security, Defendant.

Civil Action No. 15-cv-02041-REB

United States District Court, D. Colorado.

Signed October 7, 2016

Michael W. Seckar, Michael W. Seckar, P.C., Pueblo, CO, for Plaintiff.

Christina J. Valerio, Social Security Administration, J. Benedict Garcia, U.S. Attorney's Office-Denver, Denver, CO, for Defendant.

## ORDER REVERSING DISABILITY DECISION AND REMANDING TO COMMISSIONER

Blackburn, Judge.

The matter before me is plaintiff's **Complaint** [# 1],[1] filed September 17, 2015, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of chronic low back pain associated with bilateral spondylolysis and bilateral foraminal stenosis. After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on March 12, 2014. At the time of the hearing, plaintiff was 51 years old. He has a high school education and past relevant work experience as a carpenter. He has not engaged in substantial gainful activity since November 30, 2012, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established that plaintiff suffered from a severe impairment, the judge concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ concluded plaintiff had the residual functional capacity to perform a range of light work with certain postural and environmental limitations. Although this finding precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in significant numbers in the national economy he could perform. Plaintiff therefore was found not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both him previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation pro-

---

1. "[# 1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

cess for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). *See also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or

not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

 Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

 By a series of related arguments, plaintiff essentially challenges the ALJ's determination of his residual functional capacity. I concur with plaintiff that the ALJ failed to adequately substantiate her step four residual functional capacity assessment, and therefore reverse to allow her to better substantiate those conclusions.[2]

---

**2.** Other than as specifically addressed herein, I do not consider plaintiff's other allegations of error, which may be impacted on remand.

*See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *Gorringe v. Astrue*, 898 F.Supp.2d 1220, 1225 (D. Colo. 2012).

Plaintiff has suffered from low back pain since at least 2008. (*See* Tr. 194.) An August 2008 MRI of the lumbar spine revealed spondylolysis [3] at L5 with a grade 2 to 3 spondylolisthesis of the L5 with respect to S1 and foraminal stenosis at that level "with likely L5 nerve root compression in the neural foramen." (Tr. 179.)[4] Plaintiff's treating physician, Dr. Kenneth Danylchuk, has long recommended surgery (*see* Tr. 194), as did the surgeon to whom Dr. Danylchuk referred plaintiff in 2010 (Tr. 189). For reasons that remain largely unilluminated from the record, however, plaintiff appears never to have pursued this option.[5] Instead, he has relied on pain medications, in steadily increasing dosages, which are refilled at his twice-yearly appointments with Dr. Danylchuk. (*See* Tr. 192-199, 207-209, 219.) From 2009 through 2013, plaintiff consistently reported that his pain was an 8 or 9 out of 10 without medication and a 5 to 6 on Oxy-Contin and Percocet. (Tr. 193; *see also* Tr. 196.) However, by 2011, Dr. Danylchuk noted plaintiff's medications were "no longer working as well" (Tr. 199), and attempts to reduce the amount of narcotics he was taking had proved unsuccessful (*see* Tr. 219).

The ALJ here recounted the testimonial, medical, and opinion evidence in detail. Noting that plaintiff had received conservative and only intermittent treatment for his long-standing back pain, and that plaintiff reported being able to perform his activities of daily living independently, the ALJ found his subjective reports of pain and limitation not entirely credible. (Tr. 15-16.) She gave "little weight" to the functional assessments of both Dr. Danylchuk (*see* Tr. 217-218) and the consultative examiner, Dr. Jaime Easchief (*see* Tr. 210-216), saying as to both that, while she accepted the physicians' opinions

> with regard to medical issues relating to the nature and severity of the claimant's impairments, the opinion as to the claimant's residual functional capacity, the ability to do past work, the ability to do other work, and whether there is a disability under the Social Security Act are all issues reserved to the Commissioner.

(Tr. 17.) While certainly not a model of clarity, this statement, when read in context, is not quite as obtuse as plaintiff suggests. Given the ALJ's ultimate residual functional capacity determination, it is clear that while she accepted the doctors' conclusions that plaintiff had an impairment and that the impairment was severe, she rejected their assessments of the effect of that impairment on plaintiff's functional abilities.

That conclusion is problematic in several respects, however. While the determination of residual functional capacity ultimately is an administrative, not a medical, one, 20 C.F.R. § 404.1546; *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000), it still must be based on *some* medical evidence, *see* **Phillips v. Colvin**, 67 F.Supp.3d 1286, 1292 (D. Colo. 2014) (cit-

---

3. "Spondylolysis is a crack or stress fracture in one of the vertebrae, the small bones that make up the spinal column. ... In some cases, the stress fracture weakens the bone so much that it is unable to maintain its proper position in the spine—and the vertebra starts to shift or slip out of place. This condition is called spondylolisthesis." American Academy of Orthopaedic Surgeons, OrthoInfo, **Spondylolysis and Spondylolisthesis** (available at http://orthoinfo.aaos.org/topic.cfm?topic=A 00053) (last accessed October 7, 2016).

4. A second MRI performed in March 2010 revealed essentially identical findings. (*See* Tr. 181.)

5. Prior to plaintiff's alleged date of onset, he apparently refused Dr. Danylchuk's suggestion of surgery at that time, saying that "because of economic reasons he has to continue to work." (Tr. 199.)

ing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ claimed she "relie[d] on examination results and longitudinal treatment notes from [Dr. Danylchuk]" (Tr. 17), such a bald assertion is sufficient only "when the record provides no reason to question its validity." *See Ghini v. Colvin*, 82 F.Supp.3d 1224, 1234 (D. Colo. 2015). Here, by contrast it is not at all clear precisely what medical evidence supports a finding that plaintiff can perform a limited range of light work. The failure to make plain how the ALJ arrived at this conclusion by including in her opinion "a narrative discussion describing how the evidence supports each conclusion" leaves the court unable to review her decision. **Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996).

 Nor can the court find this omission to constitute harmless error in this instance. Having rejected the medical sources' estimation of the functional impact of the medical evidence, the ALJ was not empowered to substitute her own lay opinion on that issue. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004); *Phillips*, 67 F.Supp.3d at 1292. Yet the ALJ's assessment of the medical evidence does not bear close scrutiny. For example, the ALJ suggested plaintiff's care had been conservative and intermittent, and his pain adequately controlled by medications without side effects.[6] (Tr. 15.)

Without bothering to explore why plaintiff had not pursued surgical intervention, however, it is purely speculative to implicitly suggest that conservative treatment was sufficient—especially when surgery had been recommended for years. Relatedly, the "intermittent" nature of plaintiff's care does not necessarily impact negatively on his claims absent evidence that his course of treatment required more frequent contact with his doctor. *See* 20 C.F.R. § 416.902; *see also Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Gonzales v. Colvin*, 69 F.Supp.3d 1163, 1169 (D. Colo. 2014). Moreover, the medical records clearly reveal that plaintiff relied on ever-increasing doses of Oxycontin and Percocet, a course of treatment that hardly can be described as "conservative" or, indeed, efficacious.[7]

 It appears more likely the ALJ's determination was tied to her estimation that plaintiff's activities of daily living show his capacity for light work. (*See* Tr. 15 (assessing credibility and noting activities of daily living "indicate that the claimant retains adequate range of motion to perform at least light work").) While appropriately considered in the context of assessing credibility, *see Ghini v. Colvin*, 82 F.Supp.3d 1224, 1234 n.11 (D. Colo. 2015), the ALJ's own disbelief of plaintiff's subjective complaints of pain and

---

6. The conclusion that plaintiff's medications had no side effects is totally unexplored in the record. Plaintiff's Function Report (Tr. 153-160) does not address that issue directly, and plaintiff was not questioned about the side effects of medication during the hearing (*see* Tr. 26-37).

7. The other reasons cited by the ALJ are equally weak. (*See* Tr. 15-16.) That there had been no diagnostic findings since 2010 is simply a *non sequitur*—the previous studies show that plaintiff had a severe impairment and there is certainly nothing in the record to suggest that his condition *improved* in the

ensuing years. While plaintiff's attempts to find work and receipt of unemployment benefits for some period after his alleged date of onset may indicate that his impairments were not disabling, *see Perotin v. Colvin*, 110 F.Supp.3d 1048, 1054 & n.4 (D. Colo. 2015), those considerations at best might be thought to require an adjustment of the onset date, not necessarily a denial of the entire period of alleged disability. Finally, that plaintiff had failed to follow doctors' advice to quit smoking is indicative of nothing whatsoever, as there is no evidence that smoking contributed to or effected plaintiff's impairments in any way.

limitation does not provide a basis on which to reject a medical source opinion, *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Phillips*, 67 F.Supp.3d at 1292. Moreover, the ability to engage in limited household and other activities of daily living does not correlate to the ability to perform substantial gainful activity on a regular work schedule. *See* 20 C.F.R. § 404.1572(c); *Thompson*, 987 F.2d at 1490.

That limitation is especially glaring here because the ALJ's recitation does not fully and accurately reflect the record evidence regarding plaintiff's activities of daily living. The ALJ stated plaintiff was capable of caring for his personal needs, doing light household chores, preparing simple meals, driving, shopping, taking daily walks, and fishing and playing with his grandchildren. (Tr. 15.) That benign description does not square with the actual evidence, however. For example, Dr. Easchief's report, on which the ALJ purported to rely, summarized plaintiff's report of his daily activities thus:

> Mr. Ryan reports that he begins his typical day about 6:30 am and usually goes to bed about 11 pm. He reports having a lot of trouble sleeping due to pain and he usually only gets about 4 hours of sleep a night. He reports that he is able to get himself in and out of bed, dress, and bathe himself. However, his wife does the majority of the cooking, cleaning, and driving as he finds it difficult to sit or stand for long periods of time. He reports that he spends his typical day doing a little house work, a little yard work, and cooking when he can.

(Tr. 211.) Similarly, to conclude from plaintiff's Function Report that he can prepare "simple meals" hardly seems to capture

accurately his statement that he can heat up a frozen dinner or make toast. (Tr. 155.) Likewise, plaintiff's "daily walks" consist of a trip to the end of the block and back (Tr. 36), and his interaction with his grandchildren (whom he sees no more than four times a year) is limited to watching them play in the sandbox (Tr. 28, 30). In short, while the evidence reveals that plaintiff is capable of performing most of the activities cited by the ALJ,[8] he must do them for limited periods of time, interspersed with significant periods of rest. Such activities do not provide substantial evidence to support a finding that plaintiff is capable of sustained, regular work.

For these reasons, I find the disability decision is not supported by substantial evidence and must be remanded. Although plaintiff requests a directed award of benefits, I find this case does not represent an appropriate circumstance for the exercise of my discretion in that regard.[9] *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).

## IV. ORDERS

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

2. That this case is remanded to the ALJ, who is directed to

 a. Reevaluate plaintiff's residual functional capacity, explaining her decision fully as contemplated by **Social Security Ruling** 96-8p;

 b. Recontact any treating or examining physicians for further clarification of their findings, seek the testimony of

---

8. With the exception of fishing, however. Contrary to the ALJ's opinion, plaintiff plainly testified he could no longer fish. (Tr. 36.)

9. By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

medical experts, order further consultative examinations, or otherwise further develop the record as she deems necessary;

c. If necessary, reassess her determination at step five of the sequential evaluation; and

d. Reassess the disability determination; and

3. That plaintiff is awarded his costs, to be taxed by the clerk of the court in the time and manner required by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).